This contract case, before us on cross-motions for summary judgment, calls upon the court to review a decision of the Interior Board of Contract Appeals (board), 80-2 BCA ¶ 14,694 (Nos. IBCA-1197-6-78 and IBCA-1204-8-78), and to decide a breach of contract claim. We uphold the board and decide that no breach occurred.
Plaintiff entered into an indefinite quantity contract with the Environmental Protection Agency at Research *766 Triangle Park, near Durham, North Carolina, for overflow typing services. The contract, dated August 15, 1977, guaranteed only $500 worth of work, but estimated (and stated as the contract maximum) utilization in the amount of $11,689 for the first contract period (a month and a half) and a total of $397,889 for three 1-year optional extension periods. The Government exercised the first option period (ending September 30, 1978); however, the work actually given plaintiff never exceeded 10 percent of the estimates.
The estimates were prepared by John DeFord, Director of the Office of Administration at the epa facility. He considered the past needs of the Office of Administration and consulted other offices at the research facility. The actual estimates were prepared by taking a percentage of the historical data and, when in doubt, adopting a higher figure. This is consistent with setting a contract maximum. Mr. DeFord apparently did not consider the epa’s acquisition at about this time of a new high-capacity word processing system.
The contract required plaintiff to set up an office near the epa facility in North Carolina, which plaintiff did. On December 5, 1977, plaintiff, concerned about the lack of work, asked permission to do the contract work at. its headquarters in Vienna, Virginia. This request was denied by the contracting officer, citing the difficulty of meeting the contractual 72-hour turnaround time from that distance.
In May 1978 plaintiff requested an equitable adjustment for the significant work underrun. The contracting officer denied this request on June 9, 1978. Plaintiff appealed to the board (No. IBCA-1197-6-78).
On August 9,1978, after several late orders, the contracting officer terminated the contract for default. Plaintiff appealed this also to the board (No. IBCA 1204-8-78).
The board, on September 30, 1980, held that it was without jurisdiction of the equitable adjustment claim, either under the contract because it was an indefinite quantity contract, or under the Contract Disputes Act of 1978 (act), 41 U.S.C. §§ 601-613 (Supp. Ill 1979), because the contracting officer’s final decision was on June 9,1978, well before the March 1, 1979, effective date of the act. The *767 board decided the termination claim on the merits, upholding the default determination.
Plaintiff on October 20, 1980, asked the contracting officer to make a new determination of its equitable adjustment claim, this time on a breach of contract theory, for . the purpose of invoking the Contract Disputes Act. The contracting officer obliged and denied the breach claim on December 17, 1980. Plaintiff then appealed the equitable adjustment/breach of contract claim directly to this court under the provisions of the act. At the same time it appealed the board’s default decision.
Our first task is to determine whether the provisions of the Contract Disputes Act apply to this case. We find that they do not. The resubmission of the equitable adjustment claim in breach of contract garb cannot clothe it with jurisdiction under the act. The contracting officer’s final decision was rendered on June 9, 1978. Therefore, the equitable adjustment claim cannot be said to have been pending before the contracting officer on the effective date of the act, March 1,1979, Pub. L. No. 95-563, § 16, 92 Stat. 2391 (1978). Nor, because it is clearly a resubmission, can it be said to have been instituted after March 1,1979. Monroe M. Tapper & Assocs. v. United States, 222 Ct. Cl. 34, 38-41, 611 F.2d 354, 357-58 (1979); Troup Bros., Inc. v. United States, 221 Ct. Cl. 850 (1979). To permit plaintiffs action to bring the claim under the act would invite manipulation of the act and in this case bring about an anomalous situation where part of the case is subject to the old Wunderlich Act law and part is subject to the new Contract Disputes Act standards.
Since the Contract Disputes Act does not apply, our review of the board’s decision is governed by the Wunder-lich Act, 41 U.S.C. §§321-322 (1976). The board made essentially two decisions: (a) that it had no jurisdiction of the equitable adjustment claim, and (b) that default termination was proper. There is no need to go into these issues in detail here. We find that the board’s jurisdictional ruling was correct as a matter of law, for the reasons stated in the board’s opinion. We also agree with the board’s finding that a move to Vienna, Virginia, was properly denied. As to the default termination, we find that the board applied the *768 correct legal standard and that its conclusion was based on substantial evidence. We therefore deny plaintiff relief under the Wunderlich Act.
Having disposed of plaintiffs claims under the Contract Disputes Act and the Wunderlich Act, the default claim has been decided on the merits, but we have not addressed the merits of the equitable adjustment/breach of contract claim based on the contract estimates. This must be resolved by us de novo in the context of a "pure” breach of contract claim brought directly under our Tucker Act jurisdiction. 28 U.S.C. § 1491 (1976). The question presented to us on cross-motions for summary judgment is whether as a matter of law plaintiff is precluded from recovering for errors in defendant’s estimates in an indefinite quantity contract.
The key consideration here is the allocation of risk under the contract. The case is thus related to, though not controlled by, our recent decisions firmly upholding disclaimers of warranties of quantity in timber sales contracts. Webco Lumber, Inc. v. United States, 230 Ct.Cl. 457, 677 F.2d 860 (1982); Caffall Bros. Forest Products, Inc. v. United States, 230 Ct.Cl. 517, 678 F.2d 1071, cert. denied October 12, 1982; Gregory Lumber Co. v. United States, 230 Ct.Cl. 1041 (1982). The general rule is clear: a contractor cannot sign a contract which allocates the risk to it and then 4 years later come to this court, having lost its gamble, and insist that the risk be placed on the Government. Id.
This contract presents a similar situation. Article IV of the contract stated, in pertinent part:
B. The maximum amount of supplies or services to which the Government will be entitled to order and the Contractor shall be required to furnish for the period ending September 30, 1977[,] shall be not more than $11,689.00 and the maximum amount of supplies or services required during the remainder of the contract (Options No. 1, 2, and 3) shall not exceed $397,889.00. The Government will order a minimum of $500.00 of the supplies or services set forth in the Schedule. [Emphasis supplied.]
*769 The Solicitation for Bids likewise made clear both that the contract was an indefinite quantity contract and that the estimates contained therein were not guarantees of amounts required. Furthermore, as the board pointed out, the countract (article XX) also stated that:
The Government (epa) reserves the right to award contracts and orders to other companies for like services during the same performance period as this contract.
In light of this provision, plaintiff could not reasonably have believed that it had any right to expect that the estimated quantities would in fact be ordered. Confirming this, the record shows that plaintiff in its bid recognized the indefinite quantity nature of the contract and in conversations with contracting officials recognized that it was taking a risk.
The present contract is not a requirements contract; it is an indefinite quantity contract. This distinction is crucial to an understanding of the parties’ legitimate expectations and their responsibilities. The contractor here cannot expect the kind of accuracy in estimation that it can in a requirements or fixed price contract. By the same token, the Government cannot be held to the negligence standard for requirements contracts, enunciated in Womack v. United States, 182 Ct. Cl. 399, 412-13, 389 F.2d 793, 801 (1968). The Federal Procurement Regulations clearly spell out the difference in standards between a requirements and an indefinite quantity contract. 41 C.F.R. § l-3.409(b),(c) (1981). See also Radionics, Inc., 77-1 BCA ¶ 12,448 at 60,312 (asbca No. 20796). They provide that, for an indefinite quantity contract, the stated maximum
should be as realistic as possible. The maximum may be obtained from the records of previous requirements and consumption, or by other means.
41 C.F.R. § l-3.409(c)(l). It appears to us that, in the context of the language of the contract, see Federal Electric Corp. v. United States, 202 Ct. Cl. 1028, 1036, 486 F.2d 1377, 1381 (1973), cert. denied, 419 U.S. 874 (1974), and of the parties’ understanding of the allocation of risks, whatever their *770 defects the estimates prepared by Mr. DeFord met that standard. There was no breach.
it is therefore ordered, upon careful consideration of the parties’ submissions and the record and after oral argument, that plaintiffs motion for summary judgment is denied, defendant’s cross-motion for summary judgment is granted, and the petition is dismissed.