Deborah **ARRINGTON**, Independent Administratrix of the Estate of William Arrington, deceased, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 93–753T.

United States Court of Federal Claims.

Oct. 6, 1995.

Philip A. Masquelette, Houston, TX, for plaintiff.

W.C. Rapp, Washington, DC, with whom was Assistant Attorney General Loretta C. Argrett, for defendant.

### ORDER

MILLER, Judge.

This case comes before the court after argument on cross-motions for summary judgment. The issues to be resolved are whether the Internal Revenue Code requires the inclusion of the following interests in the decedent's gross estate: 1) the corpus of a trust held for the use and benefit of the decedent, 2) the date-of-death value of an annuity payable solely for the use and benefit of the decedent, and 3) $135,000.00 held by a court, and later paid to the decedent's parents, for the use and benefit of the decedent.

### FACTS

The following facts are undisputed. Deborah Arrington's ("plaintiff") son William Arrington (the "decedent") died on May 25, 1992, at the age of seven. Prior to the decedent's death, his parents filed a personal injury suit in Texas state court alleging that negligence and gross negligence on the part of Drs. Jasbir S. Ahluwalia and Linda King Matheiy and Harris Methodist Stephenville Hospital, formerly Stephenville General Hospital, of Houston, Texas, led to certain severe injuries sustained by the decedent at birth. On December 8, 1989, a pre-trial settlement was reached with several of the defendants in the personal injury suit.[1] The December 8, 1989 settlement agreement, in addition to requiring a payment of $505,000.00 for the decedent's attorneys' fees, provided for a payment of $135,000.00 "to the Clerk of the District Court of Tarrant County for the use and benefit of WILLIAM ARRINGTON." The settlement further provided:

> Withdrawal of any amount of money from this account during the period of WILLIAM ARRINGTON's minority may be made only for the use and benefit of WILLIAM ARRINGTON and only upon proper application and order of this Court. Any money not withdrawn shall be held by the District Clerk of Tarrant County until WILLIAM ARRINGTON reaches his majority, at which time the District Clerk of Tarrant County will distribute the remainder of the deposited funds and any accured [sic] interest to WILLIAM ARRINGTON.

This settlement agreement also provided for the funding of an annuity "for the sole use and benefit of WILLIAM ARRINGTON." Specifically, the annuity would be for

> the sum of Two Thousand Twenty Seven and 86/100 ($2,027.86) Dollars per month beginning on January 7, 1990 for the remainder of WILLIAM ARRINGTON's life, guaranteed for a minimum of three hundred and sixty (360) months. In the event of WILLIAM ARRINGTON's death prior to the expiration of three hundred sixty (360) months, the remaining monthly payments in the guaranteed period shall continue to be paid as they fall due on a monthly basis to the Estate of WILLIAM

---

1. These defendants included: Jasbir S. Ahluwalia, M.D.; Linda King Matheiy, M.D.; Stephen- ville Medical and Surgical Clinic; and American Physicians Insurance Exchange.

ARRINGTON and not in a lump sum.[2]

The annuity contract lists the initial payee as "Wilford Arrington and Deborah Arrington, as Parents and Next Friends of William Arrington, for the sole use and benefit of William Arrington," and the contingent payee as the "Estate of William Arrington."[3] The decedent's federal estate tax return listed the date-of-death value of the annuity as $264,838.00.

The personal injury suit against the remaining defendant, Harris Methodist Stephenville Hospital, went to trial on June 3, 1991, and resulted in an August 20, 1991 jury verdict in favor of the decedent and his parents in the amount of $2,673,000.00. On September 18, 1991, a settlement agreement between the decedent and defendant in the above action was executed. This settlement agreement, in addition to providing for the payment of $150,000.00 to the decedent's parents and $1,187,685.81 to his attorneys, required the following:

> [T]he Defendants shall deposit the sum of EIGHT HUNDRED FIFTY THOUSAND DOLLARS ($850,000.00) into the registry of the Court which said sum shall be invested by the District Clerk at a competitive rate of interest in savings accounts, certificates of deposit or interest bearing time deposits ... for the use and benefit of WILLIAM ARRINGTON, a minor, and which said sum shall remain on deposit at such institution or institutions until further order of this Court.

On April 6, 1992, by court order, the William Arrington Trust was created and funded with the above $850,000.00. The trust was held and administered by the Texas Commerce Bank. Section V of the William Arrington Trust agreement provided as follows:

2. The settlement allowed for assignment of the annuity obligation to Jamestown Life Insurance Company and the funding of the annuity through the purchase of an annuity policy from First Colony Life Insurance Company.

3. The American Physicians Insurance Exchange assigned the annuity to the Jamestown Life Insurance Exchange and the "Annuity Issuer" was the First Colony Life Insurance Company.

4. If a trust for a minor or incapacitated is terminated before the beneficiary reaches his eigh-

"[T]he Trustee shall distribute for the benefit of WILLIAM ARRINGTON so much of the income and principal of the trust as the Trustee in its sole discretion deems necessary and appropriate to provide for his health, education, maintenance and support in accordance with his circumstances and condition and considering all other sources of funds available to him." Section V(b) of the trust agreement stated that the trust

> shall terminate upon the earlier of the attainment of the age of 25 years by the Beneficiary [the decedent] or upon the death of the Beneficiary, and the principal of the trust shall be distributed in fee simple and free of trust unto the Beneficiary or the representative of the estate of the deceased Beneficiary. Notwithstanding the foregoing, the Trust shall not under any circumstances terminate prior to the time the Beneficiary regains capacity.

Section IV of the trust agreement gave the court the power to

> amend, modify, or revoke this Trust at any time before its termination. This trust may not be amended, modified, or revoked by the Beneficiary or by a guardian of the Beneficiary's estate. If the trust is revoked by the Court before the Beneficiary is 18 years old, the Court may provide for the management of the trust principal and any undistributed income in any manner authorized by Chapter 142 of the Texas Property Code. If the Trust is revoked by the Court after the Beneficiary is 18 years old, the trust principal and any undistributed income shall be delivered to the Beneficiary after the payment of all proper and necessary expenses.[4]

teenth year, chapter 142 of the Texas Property Code provides that "the court may provide for the management of the trust principal and any undistributed income as authorized by this chapter." TEX.PROP.CODE ANN. § 142.005(d) (West 1995); see infra note 5. Chapter 142 allows for the court to issue decrees and judgments, select bonded managers, or establish trusts to manage the funds of a minor or incapacitated person who is the recipient of an award, settlement, or judgment. See TEX.PROP. CODE ANN. § 142.

Upon the decedent's death, the William Arrington Trust was terminated and distributed to the Estate of William Arrington.

On February 16, 1993, plaintiff filed a United States Estate (and Generation–Skipping Transfer) Tax Return with the Internal Revenue Service (the "IRS"), which included the date-of-death value of the William Arrington Trust ($872,015.00) and the date-of-death value of the annuity ($264,838.00) in William Arrington's gross estate. Plaintiff paid the total estate tax in the amount of $160,690.00. On March 22, 1993, plaintiff filed a Claim for Refund and Request for Abatement with the IRS seeking a refund of the entire $160,690.00 in estate tax paid on the ground that the trust and annuity at issue are not property of the Estate of William Arrington so as to be subject to federal estate tax. The IRS has not refunded the amount sought by plaintiff. On December 9, 1993, plaintiff filed a complaint with the Court of Federal Claims seeking a refund of the estate tax paid.

On April 3, 1995, the IRS assessed a deficiency against plaintiff in federal estate tax in the amount of $55,367.24 plus interest totaling $9,595.03. This deficiency was based on the non-inclusion in the decedent's gross estate of the $135,000.00 payment to the Clerk of the District Court of Tarrant County—pursuant to the December 8, 1989 settlement agreement. The justification for this assessment was the determination by the IRS Commissioner that this $135,000.00 is property in which the decedent had an interest under the Internal Revenue Code ("I.R.C.") § 2031, 26 U.S.C. § 2031 (1988), and thus, should have been included in his gross estate. Plaintiff has not paid this deficiency.

## DISCUSSION

1. *Standard of review*

■ In a tax refund case, there is a strong presumption that the IRS Commissioner's tax assessment is correct. *E.g., Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Young & Rubicam, Inc. v. United States,* 187 Ct.Cl. 635, 644, 410 F.2d 1233, 1238 (1969). The burden is on the taxpayer to rebut this presumption and to establish an entitlement to the exact dollar amount comprising the claimed overpayment. *United States v. Janis,* 428 U.S. 433, 440–41, 96 S.Ct. 3021, 3025–26, 49 L.Ed.2d 1046 (1976); *Helvering v. Taylor,* 293 U.S. 507, 514–15, 55 S.Ct. 287, 290–91, 79 L.Ed. 623 (1935); *Eli Lilly & Co. v. United States,* 178 Ct.Cl. 666, 677, 372 F.2d 990, 997 (1967).

■ To overcome this presumption, the taxpayer must present "substantial evidence as to the wrongfulness of the Commissioner's determination." *KFOX, Inc. v. United States,* 206 Ct.Cl. 143, 151–52, 510 F.2d 1365, 1369 (1975). Even if this burden is met, the taxpayer still bears the burden of persuasion. *See Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293, *modified,* 284 U.S. 599, 52 S.Ct. 264, 76 L.Ed. 514 (1932) (holding taxpayer must prove entitlement to withheld monies); *Kraft, Inc. v. United States,* 30 Fed.Cl. 739, 757–58 (1994) (holding that once presumption disappears, "the court is left to independently resolve the question of the tax upon the basis of all of the evidence of record before it.") (citations omitted); *Sara Lee Corp. v. United States,* 29 Fed.Cl. 330, 334 (1993) (ruling that in tax refund case taxpayer bears burden of proof, including both burden of going forward and burden of persuasion).

2. *Definition of a beneficial interest*

In this case defendant argues that the decedent had a beneficial interest in the property at issue so as to be subject to federal estate tax. The primary purpose of the federal estate tax is to tax the transfer of property at death. *Estate of Tully v. United States,* 208 Ct.Cl. 596, 600, 528 F.2d 1401, 1403 (1976). I.R.C. § 2031 provides that "[t]he value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of death of all property, real or personal, tangible or intangible, wherever situated." I.R.C. § 2033 provides that "[t]he gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." The regulations define the extent of this interest as "the value of all property, wheth-

er real or personal, tangible or intangible, and wherever situated, beneficially owned by the decedent at the time of his death." Treas.Reg. § 20.2033–1 (1994).

■ Whether property is beneficially owned by the decedent turns on state law definitions of property interests. As the Supreme Court stated in *Morgan v. Commissioner of Internal Revenue,* 309 U.S. 78, 80, 60 S.Ct. 424, 426, 84 L.Ed. 1035 (1939): "State law creates legal interests and rights. The federal revenue acts designate which interests or rights, so created, shall be taxed." Because the decedent resided in Texas and the property interests at issue were created under Texas law, the court looks to the laws of Texas to determine whether the property at issue was beneficially owned by the decedent so as to be subject to federal estate tax.

### 3. *Interest in the William Arrington Trust*

■ The September 18, 1991 settlement agreement between the decedent and Harris Methodist Stephenville Hospital, called for the payment of $850,000.00 to "the registry of the Court ... for the use and benefit of William Arrington...." On April 6, 1992, the state court established the William Arrington Trust and funded it with this $850,-000.00 payment. Plaintiff argues that the decedent possessed only a contingent remainder interest in the William Arrington Trust and that under Texas law this contingent interest did not make the decedent a beneficial owner of the trust subject to federal estate tax. As the Supreme Court stated in *Helvering v. Stuart,* 317 U.S. 154, 161, 63 S.Ct. 140, 144, 87 L.Ed. 154 (1942): "Grantees under deeds, wills and trusts, alike, take according to the rule of the state law. The power to transfer or distribute assets of a trust is essentially a matter of local law." Under Texas law the terms of the trust, the intent of the settlor of the trust, and the circumstances surrounding the creation of the trust determine whether a decedent's interest is vested—and subject to federal estate tax—or contingent and not subject to estate tax. *See Estate of Farish v. United States,* 233 F.Supp. 220, 232–33 (S.D.Tex.

1964), *aff'd,* 360 F.2d 595 (5th Cir.1966) (construing Texas law in tax refund suit alleging that contingent interest in trust was erroneously included in decedent's gross estate).

Under Texas law "[i]t is well settled that a remainder is vested where there is a person in being who would have an immediate right to possession upon the termination of the [prior] estate." *Chadwick v. Bristow,* 146 Tex. 481, 488, 208 S.W.2d 888, 891 (1948). If a contingent element is included in the description of the remainder interest, then interest is contingent; but if a contingent element is included after terms creating a vested interest, then the interest is vested. *Guilliams v. Koonsman,* 154 Tex. 401, 406, 279 S.W.2d 579, 582 (1955). Furthermore, " '[t]he law favors the vesting of estates at the earliest possible period, and will not construe a remainder as contingent where it can reasonably be taken as vested.' " *Id.* (quoting *Caples v. Ward,* 107 Tex. 341, 345, 179 S.W. 856, 858 (1915)).

The William Arrington Trust was established for the "use and benefit of William Arrington," and the trust instrument contains no explicit limitations on the eventual right of the decedent to the property. The trust provides that the decedent receive as much income and principal of the trust as necessary for his "health, education, maintenance and support" until he reached the age of 25, after which the principal of the trust would be distributed to the decedent "in fee simple and free of trust." The trust agreement also provides that, if the beneficiary dies before he reached the age of 25, the principal of the trust would be distributed to the decedent's estate "in fee simple and free of trust." The decedent's interest is vested and subject to federal estate tax because no other party is given any beneficial interest in the William Arrington Trust and no limitations are placed on the decedent's right to the principal of the trust upon either his death or attainment of the age of 25.

Plaintiff argues that the power of the District Court of Tarrant County to "amend, modify, or revoke [the] Trust at any time before its termination" renders the decedent's interest in the trust contingent. However, the language of the trust agreement

does not indicate that the power given to the Texas court in the trust agreement went beyond the usual power of a court of equity to police a trustee's administration of a trust. *See, e.g., First Nat'l Bank of Beaumont v. Howard,* 149 Tex. 130, 229 S.W.2d 781 (1950). Moreover, the language of the trust agreement establishes that the power of the Texas court to "amend, modify or revoke" the trust cannot be used in any way to divest the decedent of any interest. The agreement provides that, if the beneficiary is 18 years old at the exercise of such power, "the trust principal and any undistributed income shall be delivered to the Beneficiary after the payment of all proper and necessary expenses." If the power is used before the beneficiary reaches the age of .18, the trust agreement allows the court to "provide for the management of the trust principal and any undistributed income in any manner authorized by Chapter 142 of the Texas Property Code." [5] Chapter 142 of the Texas Property Code is entitled "MANAGEMENT OF PROPERTY RECOVERED IN SUIT BY A NEXT OF FRIEND" and sets forth rules and procedures that a Texas court must follow to ensure that a minor or incapacitated person, who is the recipient of an award or judgment in his favor, receives the benefit of the recovery. *See* TEX.PROP.CODE ANN. § 142 (West 1995). Nothing in chapter 142 of the Texas Property Code renders the decedent's interest in the William Arrington Trust contingent. In fact, chapter 142 ensures and protects the decedent's rights and interest in the trust.[6]

Finally, plaintiff argues that, under Texas law, a beneficiary of a discretionary spend-thrift trust does not have a beneficial interest in the trust principal. To support this argument, plaintiff cites *Kolpack v. Torres,* 829 S.W.2d 913, 915 (Tex.App.1992), which states: "The beneficiary of a discretionary trust cannot compel the trustee to pay him or to or to apply for his use any part of the trust property, nor can a creditor of the beneficiary reach any part of the trust property until it is distributed to the beneficiary." In addition, plaintiff cites *In re Shurley,* 171 B.R. 769 (Bankr.W.D.Tex.1994), and *In re Wilson,* 140 B.R. 400 (Bankr.N.D.Tex.1992), for the proposition that under Texas law a discretionary spendthrift trust shields the assets of a trust from the creditors of a trust beneficiary. The court does not take issue with plaintiff's analysis of Texas law on this point; however, none of this law is relevant to the issue at hand.

This case is not about creditors trying to reach trust assets or a beneficiary attempting to force a trustee to distribute trust property; rather, the issue is whether the decedent beneficially owned the trust so as to be subject to federal estate tax. The decedent is the only party who possessed a direct beneficial interest in the William Arrington Trust. The trust agreement states that if the beneficiary dies before he reaches the age of 25, as he did in this case, "the trust shall be distributed in fee simple and free of trust unto the ... representative of the estate of the deceased Beneficiary[,]" and the trust property, in fact, was paid into the decedent's estate. The decedent was the sole beneficial owner of the William Arrington Trust, his interest was not contingent,

---

5. Section IV of the trust agreement, granting the court the power to "amend, modify, or revoke" the trust, is taken almost verbatim from TEX. PROP.CODE ANN. § 142.005(d), which states:

A trust created under this section may be amended, modified, or revoked by the court at any time before its termination, but is not subject to revocation by the beneficiary or a guardian of the beneficiary's estate. If the trust is revoked by the court before the beneficiary is 18 years old, the court may provide for the management of the trust principal and any undistributed income as authorized by this chapter. If the trust is revoked by the court after the beneficiary is 18 years old, the trust principal and any undistributed income shall

be delivered to the beneficiary after the payment of all proper and necessary expenses.

6. Plaintiff also cites *Hughes v. Jackson,* 125 Tex. 130, 81 S.W.2d 656 (1935), for the proposition that a beneficiary of a discretionary trust does not have a beneficial interest in the trust until the trustee exercises his discretion. However, this case merely states that "a trust may be so created that no interest vests" until the trustee exercises his discretion. *Id.* at 136–37, 81 S.W.2d 656. The William Arrington Trust was not so created for federal estate tax purposes because it specifically provides for the payment of the trust principal into the decedent's estate upon the beneficiary's death.

and thus his interest is subject to federal estate tax.

#### 4. *Interest in the annuity*

■ The December 8, 1989 settlement agreement between the decedent and several of the defendants in the personal injury suit called for the creation of an annuity that would pay the decedent $2,027.86 "per month beginning on January 7, 1990 for the remainder of WILLIAM ARRINGTON's life, guaranteed for a minimum of three hundred and sixty (360) months." The agreement further provided that if the decedent died "prior to the expiration of three hundred and sixty (360) months, the remaining monthly payments in the guaranteed period shall continue to be paid as they fall due ... to the Estate of WILLIAM ARRINGTON...." William Arrington was the only beneficiary of this annuity, no limitations were placed on his right to these payments, and upon his death, the annuity proceeds are paid into his estate.

Plaintiff argues that the date-of-death value of the annuity should not be included in the decedent's gross estate because, under Texas law, the future payments of an annuity are not beneficially owned by a decedent. This argument is based on the annuity contract, which names the initial payees as "Wilford Arrington and Deborah Arrington, as Parents and Next Friends of William Arrington, for the sole use and benefit of William Arrington" and the contingent payee as the "Estate of William Arrington." Plaintiff argues that each payment from the annuity to Wilford and Deborah Arrington created a trust in favor of William Arrington, pursuant to TEX.PROP.CODE ANN. § 112.001(5) (West 1988), for the amount paid; yet, there is no trust in the sum total of all the payments made before the decedent's death be-

cause "[a] trust cannot be created unless there is trust property." TEX.PROP.CODE ANN. § 112.005.[7] Plaintiff also argues that payments made from the annuity after the decedent's death created no trust in favor of the decedent because "legal title to the trust property and all equitable interests in the trusts became merged in the same persons." Plf's Br. filed Sept. 11, 1995, at 37 (citing TEX.PROP.CODE ANN. § 112.034 (settlor of trust may not vest all legal and equitable interests in same person)).

Plaintiff's arguments again fail to address the central fact: The settlement agreement and the annuity contract state that if decedent dies before the 360th monthly payment, all remaining payments are to be made to the "Estate of William Arrington." The issue is not whether a trust was created upon each monthly payment of the annuity or whether there was a merger of legal and equitable interests after the death of the decedent. As the annuity contract established, the decedent was the sole beneficiary of the annuity; upon his death, payments would be made to his estate.[8] While payments during the decedent's life were made to decedent's parents, they did not receive these payments in their individual capacities, but only as representatives of the decedent. Nothing in the settlement agreement, the annuity contract, or Texas law prevents finding the decedent the beneficial owner of the annuity.

#### 5. *Interest in the $135,000.00 payment*

■ The December 8, 1989 settlement agreement also provided for a payment of $135,000.00 "to the clerk of the District Court of Tarrant County for the use and benefit of WILLIAM ARRINGTON" and stipulated that, during the decedent's minority, the money could only be paid out for his "use and

---

7. Plaintiff's argument seems to be that each payment from the annuity created a trust, and, as the money from each payment was expended to serve the needs of the decedent, these individual trusts were terminated because of the requirement that a trust have a corpus. *See* TEX.PROP. CODE ANN. § 112.005.

8. While it is true that the annuity contract lists the initial payees as Wilford and Deborah Arrington, they hold this status solely "as Parents and Next Friends of William Arrington, for the sole

use and benefit of William Arrington." Moreover, the contract states that payments will be made "for life with 30 years certain." This refers to the "life" of William Arrington for whom the annuity was created. The contract states that when Wilford and Deborah Arrington are no longer able to accept payments on behalf of William Arrington, *i.e.*, upon William Arrington's death, any remaining payments are to be paid to the "Estate of William Arrington."

benefit," and, upon reaching his majority, the remainder of the $135,000.00, plus any interest, would be paid to William Arrington. Plaintiff did not include this property in the February 16, 1993 United States Estate (and Generation–Skipping Transfer) Tax Return. On April 3, 1995, the IRS assessed a deficiency against plaintiff, stating that this property should have been included in the decedent's gross estate.

Plaintiff asserts that she does not owe tax on the $135,000.00 payment because defendant has not produced evidence that the payment was made, who received the payments, or how much of the $135,000.00 remained in the decedent's estate at the time of his death. While a disagreement may be present as to how much of the $135,000.00 remained in the decedent's estate at his death, no doubt exists that the decedent possessed the sole beneficial interest in this payment and that the court and the decedent's parents were to exercise control over this money only until the decedent reached his majority. Furthermore, the determination by the IRS that tax is owing on this $135,000.00 is presumed correct, and plaintiff has the burden of proving otherwise. *Welch,* 290 U.S. at 115, 54 S.Ct. at 9. Since plaintiff failed to provide any evidence that the $135,000.00 was not

paid for the use and benefit of William Arrington, or that all of the $135,000.00 did not remain in the decedent's estate at the time of his death, defendant established the basis for its counterclaim that federal estate tax is owed on the full $135,000.00 payment. The court, however, affords plaintiff the opportunity to persuade defense counsel and the IRS that some or all of that amount was no longer in decedent's estate as of the date of his death.[9]

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion for summary judgment is granted on the merits and with respect to liability on its counterclaim, and plaintiff's cross-motion is denied. By December 1, 1995, the parties shall file a stipulation setting forth the total estate tax, plus interest, due on defendant's counterclaim.

**IT IS SO ORDERED.**

---

9. During argument plaintiff contended that the decedent's parents gained a resulting trust in a portion of the value of the William Arrington Trust because the jury, in its June 3, 1991 verdict, gave the parents a 57.91–percent interest in the award. However, plaintiff failed to raise this argument in any of her briefs and therefore is deemed to have abandoned it. *See Webco Lumber, Inc. v. United States,* 230 Ct.Cl. 457, 465, 677 F.2d 860, 864 (1982); *Ulman v. United States,* 214 Ct.Cl. 308, 314, 558 F.2d 1, 4 (1977).