**Candy S. BRADISON, Relator,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

No. A12–0428.

Supreme Court of Minnesota.

Feb. 6, 2013.

Candy S. Bradison, Lakewood, Washington, pro se.

Lori Swanson, Attorney General, Mark B. Levinger, Assistant Attorney General, St. Paul, Minnesota, for respondent.

## OPINION

PAGE, Justice.

Relator Candy S. Bradison, as personal representative for the estate of her minor child, Katelyn S. Janson, appeals a Minnesota Tax Court order affirming the Commissioner of Revenue's denial of a refund of estate taxes paid by the estate in the amount of $41,000 and assessing tax, pen-

alty, and interest in the amount of $75,800.90 for unpaid estate taxes. We affirm.

Katelyn Janson died on April 30, 2006, as a result of complications from injuries she received in a 1995 automobile accident that took place in the state of Iowa. Katelyn's injuries were severe and left her permanently disabled. A lawsuit was brought on behalf of Katelyn and other family members and ended with a confidential settlement. As part of the settlement, two annuities were established, both of which guaranteed payments to Katelyn, through an Iowa conservator, for 15 years starting in 2001 and then continuing so long as Katelyn was alive. In addition to listing Katelyn as the annuitant or measuring life, the annuity contracts list the Estate of Katelyn Janson as the beneficiary or contingent payee so that if Katelyn died before the 15 years expired, annuity payments would be made to her estate.

In 2001, Katelyn and her family moved to Wyoming. Bradison petitioned a Wyoming court to set up a conservatorship to protect Katelyn's assets on the ground that Katelyn was a minor and mentally incompetent. In her petition, Bradison noted that she, as Katelyn's natural mother, was responsible for Katelyn's care, custody, and control. The petition was granted and resulted in all assets being transferred from the Iowa conservator to a Wyoming conservator, Hilltop National Bank.

After learning that Katelyn needed major spinal surgery, Bradison decided to move her family to Minnesota because Minnesota had facilities equipped to perform the surgery and address Katelyn's needs. A July 2003 order from the Wyoming court granted a petition by the conservator and authorized Bradison to seek special medical care for Katelyn in Minnesota or any other state. The order also authorized payment of certain medical expenses by the conservator and required Bradison to report annually on Katelyn's general condition while receiving special medical treatment.

In 2004, the family moved to a home in East Bethel, Minnesota, that was built specially for Katelyn. Katelyn underwent surgery in September 2005 and, as noted above, died on April 30, 2006. Bradison was appointed personal representative of Katelyn's estate by the Anoka County District Court. On July 6, 2006, a Wyoming court granted a petition by Hilltop National Bank to terminate the conservatorship and authorized the transfer of conservatorship assets to the personal representative of Katelyn's estate.

The estate filed its first federal and state estate tax returns in 2007. The Minnesota return indicated that the estate was that of a resident of Minnesota and reflected a federal gross estate value that included the value of the annuity payments guaranteed under the annuity contracts. The estate had no federal estate tax liability, but owed Minnesota estate taxes in the amount of $99,590. The estate made a partial payment of $41,000 when it filed the original state estate tax return. In February 2010, Bradison filed, on behalf of the estate, amended state and federal estate tax returns seeking a refund of the amount previously paid to the Minnesota Department of Revenue. The Commissioner denied the refund and, after an administrative appeal, Bradison appealed to the tax court.

At trial, Bradison argued that the annuity payments were not includable in Katelyn's estate because Katelyn did not own or contribute to the annuities and because the annuity payments were payments for personal injuries. Among other things, Bradison argued that Katelyn was a ward of the Wyoming court and therefore was

domiciled in Wyoming at the time of her death. In support of those arguments, Bradison contended that the value of the estate and the designation of Katelyn's domicile as Wyoming on amended federal returns that were "accepted as filed" by the IRS were controlling for the purpose of determining the estate's Minnesota tax liability.

The Commissioner argued that Katelyn was domiciled in Minnesota because Bradison was domiciled in Minnesota at the time of Katelyn's death and, under Minnesota law, the domicile of a child is the domicile of her parent. The Commissioner also argued that because the Wyoming conservator controlled only Katelyn's assets, the location of the conservatorship did not control Katelyn's domicile. In addition, the Commissioner asserted that the federal returns were not determinative and that the annuities were intangible property includable in the estate under I.R.C. § 2039 (2006). The tax court concluded that because the Wyoming conservatorship only had control over Katelyn's assets and Bradison was domiciled in Minnesota at the time of Katelyn's death, Katelyn was a domiciliary of Minnesota at the time of her death. The tax court also held that the annuity payments were includable in Katelyn's estate under I.R.C. § 2039.

## I.

■ We may review a final order of the tax court "on the ground that the Tax Court was without jurisdiction, that the order of the Tax Court was not justified by the evidence or was not in conformity with law, or that the Tax Court committed any other error of law." Minn.Stat. § 271.10, subd. 1 (2012). The tax court's conclusions of law and interpretation of statutes are legal questions that we review de novo. *Wilson v. Comm'r of Revenue,* 656 N.W.2d 547, 552 (Minn.2003).

■ We first address Bradison's argument that Katelyn was domiciled in Wyoming at the time of her death and that, as a result, Katelyn's intangible property is not properly included in her Minnesota gross estate. In her appeal to this court, Bradison does not contest the tax court's finding that she was domiciled in Minnesota at the time of Katelyn's death. Rather, she argues that an exception to the general rule regarding the domicile of a minor applies in this case and asserts that Katelyn was domiciled in Wyoming at the time of her death as an incapacitated minor ward of the Wyoming courts because of the establishment of the conservatorship in that state. We conclude that this argument is without merit.

■ If a decedent "has an interest in property with a situs in Minnesota," her estate must file a Minnesota estate tax return if the estate is required to file a federal estate tax return or if the federal gross estate exceeds $1,000,000. Minn. Stat. § 289A.10, subd. 1 (2012). As relevant here, the situs of property is, "with respect to intangible personal property, the state or country in which the decedent was domiciled at death." Minn.Stat. § 291.005, subd. 1(9) (2012). Domicile is established by physical presence in a place "coupled with an intent to make such place one's home." *Miller's Estate v. Comm'r of Taxation,* 240 Minn. 18, 19, 59 N.W.2d 925, 926 (1953); *see also* Minn. R. 8001.0300, subp. 2 (2011). In the case of a minor child, her domicile is generally that of her custodial parent. *State ex rel. Larson v. Larson,* 190 Minn. 489, 492, 252 N.W. 329, 330 (1934); Restatement (Second) Conflict of Laws § 22 (1971). However, an exception may apply when a minor is under guardianship. Restatement (Second) Conflicts of Law § 22, cmt. h (1971). An individual may be made the guardian of another's person or a guardian of another's

property, the latter often being referred to as a conservator. "Only a guardian of the person may affect the domicile of the ward." *Id.* This rule applies to both minors and incompetent individuals under guardianship. *See id.* §§ 22, cmt. h, 23, cmt. f.

In this case, the Wyoming court documents in the record indicate that a conservatorship was established to protect only Katelyn's assets. Although the Wyoming court's order was necessary to authorize payment from Katelyn's assets for her care and support, there is nothing in those documents to suggest that a guardianship of Katelyn's person had been established or that Katelyn was in the care and custody of anyone other than her mother, Bradison. For instance, the petition seeking the appointment of the conservator requests that a conservator be appointed to "maintain the custody and control of Katelyn's *property*," and also states that Katelyn remained in the "care, custody, and control" of Bradison. (Emphasis added.) Further, the order terminating the conservatorship notes that the conservator exercised the following duties:

   a) Collecting and receiving the ward's income;

   b) Paying funds for the benefit of the ward for her maintenance and support, including all medical expenses incurred on behalf of the ward in recent months; and

   c) Investing and managing the ward's portfolio to maximize the best return of investment.

Moreover, Wyoming statutes governing guardianships and conservatorships reflect the common law distinction between guardians of the person and conservators as guardians of the estate. *Compare* Wyo. Stat. Ann. § 3–1–101(a)(iii) (2011) (defining "[c]onservator" as "a person appointed by the court to have the *custody and control*

*of the property* of a ward" (emphasis added)), *with* Wyo. Stat. Ann. § 3–2–201(a) (2011) (listing broad powers of a guardian, including "[d]etermin[ing] and facilitat[ing] the least restrictive and most appropriate and available residence for the ward" and "[f]acilitat[ing] the ward's education, social and other activities").

The relevant statutory structure and the duties exercised by the conservator in this case support the conclusion that the conservatorship was established only to protect and manage Katelyn's assets. Bradison suggests that, as a "ward" of the Wyoming court, Katelyn was domiciled in Wyoming. But because the general rule is that only a guardian of the person can influence the domicile of a ward and because here the record is clear that, while there was a conservator of her assets, there was no Wyoming guardian of Katelyn's person, her status as a "ward" under Wyoming law does not change the fact that Katelyn's domicile was Minnesota at the time of her death. *See* Wyo. Stat. Ann. § 3–1–101(a)(xv) (2011) (defining the term "[w]ard" to include individuals under guardianship or individuals for whom a conservator has been appointed); *see also* Minn.Stat. § 291.005, subd. 1(8) (2012) (defining "[r]esident decedent" as a person "whose domicile at the time of death was in Minnesota"). Therefore, Katelyn's intangible property had a situs in Minnesota at the time of her death and may be taxed in accordance with Minnesota's estate tax provisions.

## II.

■ We next consider the question of whether the value of the annuity payments made payable to Katelyn through her conservator and ultimately to her estate are includable in her taxable estate. Bradison argues that the annuity payments are not includable because: (1) the annuity pay-

ments are excluded under I.R.C. § 104(a)(2) (2006), I.R.C. § 130 (2006), and Revenue Ruling 79–220, 1979–2 C.B. 74, as payments received as compensation for personal injuries; (2) the Internal Revenue Service "accepted as filed" an amended federal return that removed the value of the annuity payments from the estate and the Minnesota Department of Revenue is required to accept that amount for the purpose of determining the estate's Minnesota estate tax liability; and (3) Bradison is the claimant of the structured settlement contracts. We also find these arguments to be unavailing.

First, the statutes and ruling on which Bradison relies all relate to the exclusion of certain payments from gross income for income tax purposes. I.R.C. § 104(a)(2) (stating that "gross income does not include ... the amount of any damages" received as payment for "personal physical injuries or physical sickness"); I.R.C. § 130(a), (c) ("Any amount received [as an assignment of liability to make periodic payments as damages] shall not be included in gross income."); Rev. Rul. 79–220, 1979–2 C.B. 74 (addressing the exclusion of annuity payments received in settlement of a damages claim from gross income). As a result, these authorities are not relevant to the question of whether an asset is includable in an estate for estate tax purposes.

Second, Bradison relies on Minn.Stat. § 291.215 (2012), in support of her argument that the Minnesota Department of Revenue must accept the amount included in the estate on the estate's amended federal return for purposes of determining Minnesota estate tax liability because the return was "accepted [by the IRS] as filed." Section 291.215, however, addresses the valuation of assets under certain circumstances, not the inclusion of assets in an estate, and a valuation issue has not been raised in this case. *See id.*, subd. 1

(explaining valuation of "all property includable in the Minnesota gross estate"). In addition, under Minn.Stat. § 291.005, subd. 1(2), (2012), "[f]ederal gross estate" is defined as that "required to be valued and otherwise determined for federal estate tax purposes under the Internal Revenue Code," suggesting that a decedent's federal gross estate is connected to what is required under the Internal Revenue Code itself and not to particular IRS decisions. Moreover, Katelyn's estate did not owe any federal estate tax in the first instance, and so the IRS had no need to determine the accuracy of the estate's amended federal returns. Therefore, the federal returns are not determinative in this case. *See also Busch v. Comm'r of Revenue*, 713 N.W.2d 337, 342 (Minn.2006) ("Even when Minnesota tax law incorporates the federal law, the commissioner is not necessarily bound by the IRS's determinations.").

■ Finally, the value of annuity payments may be included in a decedent's estate when the decedent is the beneficial owner of the annuity payments at the time of death. *Arrington v. United States*, 34 Fed.Cl. 144, 150 (1995); *Davenport v. Comm'r*, 92 T.C.M. (CCH) 324, 328–32 (2006). Facts indicating a decedent's beneficial ownership of annuity payments include the fact that the decedent is the measuring life and the payee of the annuity under the annuity contracts, and the fact that payments are to be made to the decedent's estate upon the decedent's death. *Arrington*, 34 Fed.Cl. at 150; *Davenport*, 92 T.C.M. (CCH) at 328–32. Katelyn was the measuring life under both annuity contracts at issue here and was, through her conservator, the payee of the annuities. In addition, the annuity payments were made payable to the Estate of Katelyn Janson upon her death. *Cf. In re Thornton's Estate*, 186 Minn. 351, 355, 243 N.W. 389, 391 (1932) (explaining that an

obligation owed on a decedent's annuity policies "was an estate or property right of [the decedent's] to which the beneficiaries named succeeded at his death"). Thus, we conclude that Katelyn was the beneficial owner of the annuity payments and that the value of the annuity payments is properly included in her estate.

Affirmed.