Michelle **DALLIN**, as Personal Representative of the **ESTATE OF Donald YOUNG**, deceased, Plaintiff,

v.

**UNITED STATES, Defendant.**

No. 00–767T.

United States Court of Federal Claims.

Oct. 29, 2004.

Hugh Janow, Janow & Meyer, LLC, Pearl River, New York, for the plaintiff.

Sheryl B. Flum, Court of Federal Claims Section; David Gustafson, Assistant Chief; Mildred L. Seidman, Chief, Court of Federal Claims Section; Eileen J. O'Connor, Assistant Attorney General, Tax Division, United States Department of Justice, for the defendant.

## OPINION

HORN, Judge.

This case originally was captioned *Donald Young v. United States*. After Mr. Young died, proceedings in this case were stayed until probate was initiated, an executrix of the estate was appointed, and counsel was employed to continue representing the estate. Michelle Dallin was ultimately appointed as the executrix of Mr. Young's estate and Mr. Janow was hired to continue his representation in the case. Therefore, the case is proceeding under the above caption.

1. All statutory references are to the Internal Revenue Code of 1988, in effect for the relevant

This case arises from a penalty assessed by the IRS against Donald Young, as a responsible officer of Southern Jersey Airways, Inc. (SJA). Pursuant to 26 U.S.C. §§ 3102(a), 3402(a), and 7501(a),[1] employers are required to withhold federal social security and income taxes from their employees' wages and hold these taxes in trust for the government. The withheld taxes (trust fund taxes) must be paid to the United States on a quarterly basis. *See* 26 C.F.R. § 31.6011(a)–4 (1990); *Michaud v. United States*, 40 Fed. Cl. 1, 14 (1997), *dismissed on other grounds*, 152 F.3d 945 (Fed.Cir.1998). Since the Internal Revenue Service credits employees for the trust fund taxes regardless of whether they are paid by the employer, Congress provided that officers, and specified employees, of such employers can be held personally liable for the trust fund taxes if they are not paid when due. *See* 26 U.S.C. § 6672 ("Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax ... shall ... be liable to a penalty equal to the total amount of the tax....."); *Schultz v. United States*, 918 F.2d 164, 165 n. 1 (Fed. Cir.1990), *cert. denied*, 500 U.S. 906, 111 S.Ct. 1686, 114 L.Ed.2d 80 (1991) ("To assure collection when a corporate employer does not pay its employment taxes, section 6672(a) imposes personal liability on persons responsible for seeing that the taxes were paid...."); *Godfrey v. United States*, 748 F.2d 1568, 1574 (Fed.Cir.1984). Thus, any person required to collect, truthfully account for and pay the trust fund taxes imposed by the Internal Revenue Code, and who willfully fails to do so, is liable for a penalty in an amount equal to the tax.

On June 18, 1992, the IRS assessed a penalty pursuant to I.R.C. § 6672 in the amount of $122,287.88 against Mr. Young, who was the President and General Manager of SJA during the time period at issue in this case. The IRS issued the assessment based on two grounds: (1) SJA's failure to pay its trust fund taxes relating to a 1988 quarterly federal excise tax ($233.28) and (2) SJA's

period.

failure to turn over federal employment taxes withheld from its employees during the first three quarters of tax year 1990 ($122,054.60). In 1994, the IRS abated the penalty relating to tax year 1988 due to existing credits. As a result, the dispute in this case solely concerns the section 6672 penalties associated with SJA's unpaid employment taxes for the first three quarters of 1990. Plaintiff seeks a refund of these penalties in the amount of $118,171.15, plus interest.[2]

Plaintiff does not dispute that SJA did not pay all of the trust fund employment taxes for the first three quarters of 1990. In addition, plaintiff does not dispute that, for the purpose of I.R.C. § 6672 liability, Mr. Young was a responsible person for SJA during the first three quarters of 1990. Plaintiff alleges, however, that the IRS did not properly assess the section 6672 tax against Mr. Young. Therefore, the issue in this case is only whether the IRS properly assessed an I.R.C. § 6672 penalty against the plaintiff for SJA's unpaid employment taxes for the first three quarters of 1990.

## FINDINGS OF FACT

In 1992 and 1993, IRS Revenue Officer Barbara Alzner surveyed the administrative records of SJA and concluded that the corporation had failed to pay withheld trust fund taxes relating to its 1988 federal excise tax and federal employment taxes during the first three quarters of 1990. In mid-June, 1992, Ms. Alzner determined that the statutory period for assessing a section 6672 penalty against SJA's responsible persons for failing to pay withheld excise taxes for the period ending December 31, 1988, would expire on June 19, 1992.[3] On June 15, 1992, Revenue Officer Alzner signed a Form 4183,

"Recommendation re 100–Percent Penalty Assessment." The form was then signed by a Group Manager on June 18, 1992. The form indicated that a section 6672 penalty assessment was being considered against Donald Young, the responsible officer, in the amount of $122,287.88. Although the document did not list the months and years at which the assessment was directed, the parties agree that the intended amount under consideration for assessment included the excise taxes for the period ending December 31, 1988 and the trust fund taxes for the first three quarters of 1990, despite the fact that the time for assessing a penalty was imminently expiring only for the period ending December 31, 1988.[4] Revenue Officer Alzner wrote the following on the Form 4183: "Young is indicated as a potentially responsible person. ... Assessment is being made to protect ASED [Assessment Statutory Expiration Date]. Further documentation to establish responsibility and willfulness under I.R.C. 6672 will be gathered and an amended 4183 will be submitted when my investigation has been completed."

"Assessment" refers to a prescribed procedure for officially recording the amount of a taxpayer's administratively determined tax liability. The IRS makes assessments by having an assessment officer fill out and sign a "Summary Record of Assessment," also known as the Form 23–C. The Form 23–C shows all of the assessments for all taxpayers by a particular district, in a particular period, on a particular date, but does not contain information on individual taxpayers. On June 17, 1992, a Form 23–C was generated by the IRS's Brookhaven Service Center for the assessment date of June 18, 1992. The

---

2. Plaintiff paid a total of $123,664.61 in section 6672 penalties and related statutory interest. On August 26, 1996, the IRS concluded that plaintiff had overpaid the civil penalty by $5,493.46 and refunded that amount to the plaintiff. Therefore, although the amended complaint filed by the plaintiff requests a refund in the amount of $123,664.61, in addition to the appropriate statutory interest, the parties have stipulated that the amount at issue is $118,171.15, plus interest.

3. The statutory period allowed for assessing an I.R.C. § 6672 penalty is governed by I.R.C. § 6501, which states that "[e]xcept as otherwise

provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed). ..." 26 U.S.C. § 6501.

4. Both parties acknowledge that the statute of limitations for the first three quarters of 1990 was not scheduled to expire earlier than April 15, 1994. In an affidavit, Ms. Alzner stated that she intentionally included plaintiff's section 6672 liability for the first three quarters of 1990 as part of the June 18, 1992 assessment.

Form 23–C shows that for June 18, 1992, a total of thirty-two assessments were made. The Form 23–C also states that there were no "Principal Taxpayers" and no amounts "Related to Jeopardy Assessments" for June 18, 1992.

The June 18, 1992 assessment was made against Mr. Young when the IRS's Brookhaven Service Center's assessing officer signed the Form 23–C. The June 18, 1992, section 6672 penalty against the Mr. Young was then recorded on the IRS computer system. Therefore, on June 18, 1992, the IRS made a section 6672 penalty assessment against the plaintiff in the amount of $122,287.88. This amount included the section 6672 penalty of $233.28, which related to the trust fund portion of SJA's unpaid federal excise tax for the period ending December 31, 1988, and a $122,054.60 penalty associated with the trust fund portion of SJA's unpaid employment taxes for the first three quarters of 1990.[5]

A Form 3552, Notice of Tax Due on Federal Tax Return, dated June 18, 1992, was prepared by the defendant and received by Mr. Young. The form notified Donald Young that a civil penalty of $122,287.88 for the tax period ending "12/31/88" had been assessed against him and demanded that plaintiff pay that amount. Because the IRS had not determined Mr. Young's willfulness or responsibility, it could not yet enforce payment of the assessment against him. However, pursuant to I.R.C. § 6303, the IRS was required to notify Mr. Young, within sixty days, that an assessment had been made.[6]

After completing her investigation, on January 15, 1993, Revenue Officer Alzner signed a second Form 4183, recommending an assessment of a section 6672 penalty of $201,706.04 against Donald Young, concluding that he was a responsible officer for SJA. This assessment represented the unpaid trust fund portion of SJA's withheld excise taxes for the period ending December 31, 1988, and withheld employment taxes for all four quarters of 1990.[7]

On January 19, 1993, the IRS sent Donald Young a letter informing him of the Proposed Assessment of 100 Percent Penalty, accompanied by a Form 2751. The cover letter stated that the plaintiff had been identified as a person required to collect, account for, and pay over withheld taxes for SJA, and indicated that he had a right to appeal this determination. The accompanying Form 2751 indicated that plaintiff's section 6672 liability was $201,706.04 for willfully failing to pay SJA's withheld excise taxes for the period ending "12/31/88," and unpaid employment taxes for all four quarters of 1990. This amount included $394.92 for the first quarter of 1990, $71,073.11 for the second quarter of 1990, $50,586.57 for the third quarter of 1990, $79,418.16 for the fourth quarter of 1990, and $233.28 for unpaid excise taxes for the period ending December 31, 1988. Thus, the Form 2751 enumerated the amount of tax and the tax periods related to SJA's unpaid tax liability. Following plaintiff's receipt of the January 19, 1993 letter and the Form 2751, the IRS could enforce collection of the section 6672 penalty.

5. The $122,054.60 section 6672 penalty assessment related to the trust fund portion of SJA's unpaid employment taxes covered the first three quarters of 1990 as follows: the penalty for the tax period ending March 31, 1990 was $394.92, the penalty for the tax period ending June 30, 1990 was $71,073.11, and the penalty for the tax period ending September 30, 1990 was $50,586.70.

6. 26 U.S.C. § 6303(a) provides:
    Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

7. The penalty for the last quarter of 1990 was not included in the original June, 1992 assessment because SJA had not filed the Form 941 for that quarter as of that date. The amount of a section 6672 penalty cannot be determined until a tax return for the underlying tax is filed, either by a taxpayer or prepared by the IRS pursuant to I.R.C. § 6020. The Form 941 was filed on October 30, 1992, indicating that the unpaid trust fund portion of SJA's employment taxes for the fourth quarter of 1990 was $79,418.16. Therefore, on January 15, 1993, Ms. Alzner added this amount to the original assessment, resulting in a total penalty of $201,706.40.

Plaintiff appealed the IRS's finding of liability for a section 6672 penalty in the amount of $201,706.04. Subsequently, in 1994, the IRS abated the section 6672 assessment related to SJA's unpaid federal excise tax for the period ending December 31, 1988. The IRS Appeals Division, however, upheld the propriety of assessing a section 6672 penalty against plaintiff for failing to pay over employment taxes withheld by SJA during all four quarters of 1990. In its motion for summary judgment, plaintiff admits that the assessment for the fourth quarter of 1990 is not at issue in the present case. Therefore, this case centers solely upon the June 18, 1992, $122,054.60 penalty assessment that corresponds to the trust fund portion of SJA's unpaid employment taxes for the first three quarters of 1990. In the joint stipulation of facts, the plaintiff and defendant state that the IRS's determination that plaintiff was a responsible person for SJA for the four calendar quarters of 1990 is not at issue in this case.

By letter dated October 12, 1995, the IRS denied plaintiff's request for abatement of the section 6673 penalty for the second and third quarters of 1990. The October 12, 1995 letter also informed Mr. Young that he could file suit to contest the IRS's disallowance within two years from the mailing date of the letter. On October 11, 1996, Mr. Young filed a Form 843, requesting a refund of $124,985.00 for the period ending December 31, 1988. On this form, Mr. Young stated that the "IRS improperly assessed [a] miscellaneous penalty of $122,054.00 for the period ending 12/31/88. Form 2751 proposed an assessment for period ending 12/3/88 [sic] in the amount of $233.38." According to the joint stipulation of facts, which referred to an Exhibit 2, on September 18, 2000, the IRS denied plaintiff's refund claim. However, the letter indicated as Exhibit 2 in the joint stipulations is dated August 9, 1999, and refers to the claim for refund and request for abatement dated October 11, 1996.

Paragraph ten of the original joint stipulation of facts submitted by the parties read in pertinent part: "On June 18, 1992, the IRS made a jeopardy assessment against plaintiff pursuant to § 6862 of a § 6672 penalty in the amount of $122,054.60." Subsequently, however, the defendant's attorney filed a motion to be relieved, in part, from paragraph ten of the parties' joint stipulation of facts. According to defendant's counsel, after further research on the case, it became apparent to her that a jeopardy assessment had not been made; rather, the defendant now contends that a quick assessment is actually at issue. The plaintiff initially opposed defendant's motion for relief, asserting that a jeopardy assessment had been made.

After oral argument and discussions on defendant's motion to be relieved in part from paragraph 10 of the parties' joint stipulation of facts, the plaintiff agreed to withdraw its opposition to defendant's motion for relief. Therefore, the court granted defendant's motion to be relieved, in part, from paragraph ten of the parties' joint stipulation of facts, thereby deleting the reference to a jeopardy assessment in paragraph ten of the parties' joint stipulation of facts from the record. Paragraph 10 now reads, in pertinent part, "On June 18, 1992, the IRS made an assessment against plaintiff pursuant to § 6672 in the amount of $122,054.60." The granting of this motion resulted in the emergence of a material factual dispute between the parties as to the nature of the penalty that had been assessed in this case. However, as discussed below, the characterization of the assessment the IRS used does not affect plaintiff's tax liability.

## DISCUSSION

The parties filed cross-motions for summary judgment on the plaintiff's complaint pursuant to RCFC 56. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed. R. Civ.Plaintiff.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed. R. Civ. Plaintiff. 56(c); *see also Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Telemac Cellular Corp. v. Topp Telecom. Inc.,* 247 F.3d 1316, 1323 (Fed.Cir.2001), *reh'g denied and reh'g en banc denied* (2001); *Monon Corp. v. Stoughton Trailers. Inc.,* 239 F.3d 1253, 1257 (Fed. Cir.2001); *Avenal v. United States,* 100 F.3d 933, 936 (Fed.Cir.1996), *reh'g denied* (1997); *Creppel v. United States,* 41 F.3d 627, 630–31 (Fed.Cir.1994). A fact is material if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247–48, 106 S.Ct. 2505; *see also Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d at 1257; *Curtis v. United States,* 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied,* 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959), *reh'g denied,* 361 U.S. 941, 80 S.Ct. 375, 4 L.Ed.2d 361 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Ford Motor Co. v. United States,* 157 F.3d 849, 854 (Fed.Cir.1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact); *Johnson v. United States,* 49 Fed.Cl. 648, 651 (2001), *aff'd,* 317 F.3d 1331 (Fed.Cir.2003); *Becho, Inc. v. United States,* 47 Fed.Cl. 595, 599 (2000). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. 2505; *Jay v. Sec'y of Dep't of Health and Human Servs.,* 998 F.2d 979, 982 (Fed.Cir.1993), *reh'g denied and en banc suggestion declined* (1993). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hall v. Aqua Queen Mfg., Inc.,* 93 F.3d 1548, 1553 n. 3 (Fed.Cir. 1996). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Summary judgment:

> [S]aves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

*Dehne v. United States,* 23 Cl.Ct. 606, 614–15 (1991) (citing *Pure Gold, Inc. v. Syntex, Inc.,* 739 F.2d 624, 626 (Fed.Cir.1984)), *vacated on other grounds,* 970 F.2d 890 (Fed.Cir.1992); *United States Steel Corp. v. Vasco Metals Corp.,* 55 C.C.P.A. 1141, 394 F.2d 1009, 1011 (C.C.P.A.1968).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby. Inc.,* 477 U.S. at 248, 106 S.Ct. 2505; *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 971 (Fed.Cir.2001), *cert. denied,* 534 U.S. 1109, 122 S.Ct. 913, 151 L.Ed.2d 879 (2002); *Gen. Elec. Co. v. Nintendo Co.,* 179 F.3d 1350, 1353 (Fed.Cir. 1999). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. at 587–88, 106 S.Ct. 1348; *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d at 1257; *Wanlass v. Fedders Corp.,* 145 F.3d 1461, 1463 (Fed.Cir.1998), *reh'g denied and en banc suggestion declined* (1998).

The initial burden on the party moving for summary judgment to produce evidence

showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Trilogy Communications, Inc. v. Times Fiber Communications, Inc.,* 109 F.3d 739, 741 (Fed.Cir. 1997) (quoting *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994), *reh'g denied and en banc suggestion declined* (1995)), *reh'g denied and en banc suggestion declined* (1997); *Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1569 (Fed.Cir.1997). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Am. Airlines v. United States,* 204 F.3d 1103, 1108 (Fed.Cir.2000); *see also Schoell v. Regal Marine Indus., Inc.,* 247 F.3d 1202, 1207 (Fed.Cir.2001).

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *See Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party must go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.*

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case. *See Chevron USA, Inc. v. Cayetano,* 224 F.3d 1030, 1037 n. 5 (9th Cir.2000), *cert. denied,* 532 U.S. 942, 121 S.Ct. 1403, 149 L.Ed.2d 346 (2001); *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus*

*Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also B.F. Goodrich Co. v. U.S. Filter Corp.,* 245 F.3d 587, 593 (6th Cir.2001); *Massey v. Del Labs., Inc.,* 118 F.3d 1568, 1573 (Fed.Cir.1997).

Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other necessarily is justified. *See B.F. Goodrich Co. v. U.S. Filter Corp.,* 245 F.3d at 593; *Atl. Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir.2000); *Allstate Ins. Co. v. Occidental Int'l., Inc.,* 140 F.3d 1, 2 (1st Cir.1998); *Reading & Bates Corp. v. United States,* 40 Fed.Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. *See DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1322 (Fed.Cir.2001); *Gart v. Logitech. Inc.,* 254 F.3d 1334, 1338–39 (Fed.Cir. 2001), *reh'g and reh'g en banc denied* (2001), *cert. denied,* 534 U.S. 1114, 122 S.Ct. 921, 151 L.Ed.2d 886 (2002).

The issue in this case is whether the IRS properly assessed a section 6672 penalty against the plaintiff for SJA's unpaid employment taxes for the first, second, and third quarters of 1990. The plaintiff argues that the IRS did not follow proper procedures when assessing this penalty and, thus, summary judgment should be granted in favor of the plaintiff and the plaintiff should be refunded the penalty amounts. The defendant disagrees and asks for summary judgment in its favor. The parties have stipulated that "the propriety of the June 18, 1992 jeopardy assessment made against plaintiff is not at issue in this case."[8]  In addition, the parties

---

8. Section 7429 of the Internal Revenue Code governs the review of jeopardy levy or assess-

ment procedures. Section 7429(b)(2)(A) states that: "Except as provided in subparagraph (B),

have stipulated that: "For purposes of 26 U.S.C. § 6672 liability, plaintiff was a responsible person for Southern Jersey Airways, Inc. for the three quarters of 1990 at issue in this case," and have not argued that the taxes at issue were due.

The plaintiff asserts that there is no evidence in the existing supporting IRS documents showing that an assessment was made for the first three quarters of 1990. The summary record of assessments, the Form 23–C, states that no jeopardy assessments were made on the assessment date of June 18, 1992, while the plaintiff's Form 4340 states that a jeopardy assessment was completed, and places the entire assessment under the period ending December 31, 1988. The plaintiff also argues that, even if the penalty assessment for the period ending December 31, 1988 was valid, the assessment and the supporting documents failed to comply with I.R.C. § 6203 and its implementing regulation, 26 C.F.R. § 301.6203–1(1990), such that the defendant was not permitted to include the section 6672 penalties for the subsequent quarters, the first three quarters of 1990, in that assessment.

### The IRS Properly Assessed a Section 6623 Tax Against the Plaintiff.

Plaintiff alleges, based on the available IRS documents, that a penalty assessment was never made against Mr. Young for the first three quarters of 1990. This court determined that this argument could not be decided on summary judgment because there was a genuine issue of material fact raised as to whether a penalty was assessed, and the nature of that penalty. As noted above, in their July 10, 2003, Joint Stipulation of Facts, the parties initially stipulated that the IRS had made a jeopardy assessment against the plaintiff on June 18, 1992. Only after further research, and after the case had proceeded for some time, did the defendant's counsel request to be, and was, relieved of that stipulation. In arguing its position, defendant described the Form 4340 for Donald Young

as "erroneous." Defendant claimed that a jeopardy assessment had not been made against the plaintiff, and that the June 18, 1992 assessment, in fact, was a quick assessment.

To support its argument that no assessment was made for the first three quarters of 1990, plaintiff identifies a number of issues presented by the IRS documents in the record. First, plaintiff points out that the Form 23–C indicates that no jeopardy assessments were made on the assessment date of June 18, 1992, however, the plaintiff points out that the Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, identifies the June 18, 1992 assessment as a jeopardy assessment. Therefore, according to the plaintiff, because the assessment on the Form 4340 was identified as a jeopardy assessment, and no jeopardy assessment was identified on the Form 23–C, no assessment actually was made against the plaintiff on June 18, 1992. Additionally, plaintiff argues that because the entire $122,054.60 assessment was referenced to the period ending December 31, 1988, no assessment was made for any of the first three quarters of 1990. Finally, plaintiff asserts that if a quick assessment was used to assess the first three quarters of 1990, that assessment was inappropriate because the statute of limitations for the those quarters was not scheduled to expire until April 15, 1994.

According to the defendant, the Form 23–C indicates that no jeopardy assessments were conducted on June 18, 1992, because the penalty assessment at issue was a quick assessment. The defendant argues that quick assessments are not statutorily prescribed, but are instead wholly creatures of the IRS's internal policy and procedure, and that any technical flaw made by the IRS during its assessment did not prejudice the plaintiff. To support its argument, the defendant proclaims that the steps that would have been necessary to conduct a jeopardy assessment were not completed, including

the district courts of the United States shall have exclusive jurisdiction over any civil action for a determination under this subsection." Subparagraph (B) of section 7429(b)(2) provides limited jurisdiction to the Tax Court to review jeopardy levy or assessment procedures. This court is not

reviewing whether a jeopardy assessment should have been assessed in this case. The purpose of the stipulation by the parties was to indicate that the plaintiff is contesting the section 6672 penalty assessment, regardless of the nature of the assessment.

obtaining approval from the District Director. The defendant further asserts that the assessment was incorrectly identified on the Form 4340 as a jeopardy assessment and that the assessment was mislabeled by the Brookhaven Service Center as a jeopardy assessment.

To resolve the factual disputes in this case, the court held a hearing at which witnesses could present relevant testimony. The purpose of the hearing was to establish what kind of assessment, if any, the IRS had made against the plaintiff on June 18, 1992, and what supporting documents existed when the IRS made its assessment. At the hearing, the defendant provided testimonial evidence by IRS Revenue Officer Barbara Alzner and IRS employee Robert Green. The plaintiff chose to present no witnesses in support of its burden of proof.

At the hearing, Revenue Officer Barbara Alzner testified that she had requested a quick assessment. However, during her testimony, Ms. Alzner referred to the assessment as a "prompt assessment," stating that "any assessment that we wanted to be done manually by the Service Center was a prompt assessment to us in the field. We don't know what the Service Center did with them." Ms. Alzner then testified that she later learned that the assessment actually was treated as a quick assessment by the Service Center, even though she testified that "I did not make a quick assessment. I did not request a quick assessment. I don't know whether it was made or not." When asked directly, however, whether she recommended that a jeopardy assessment be made against Mr. Young, Ms. Alzner replied "No, I didn't." Finally, when questioned and cross examined about the documents available and prepared by her to make a recommendation for assessment, Ms. Alzner testified that she remembered completing certain documents, including a Form 2749 and Form 2859, but

that she did not know the whereabouts of those completed forms.

At the hearing, the government also elicited testimony from IRS employee Robert Green. Mr. Green stated that he was employed as a tax examiner at the Brookhaven Service Center in New York and that, among his various duties, he was one of the IRS's "Court witnesses for the Service Center. I testify on behalf of the IRS in Court." The defendant called Mr. Green to discuss the procedures used at the Brookhaven Service Center, and to identify the Document Locator Numbers (DLN), which are codes assigned by the IRS to identify the type of assessments made, and show that, in the plaintiff's case, a quick assessment was conducted. Mr. Green indicated that he had no personal knowledge of the events in Mr. Young's case. During his testimony, Mr. Green testified that "the Service Center uses the term prompt and quick assessment interchangeably," and that based on the DLNs identified on the Form 4340, a quick assessment was conducted, even though "jeopardy assessment" is spelled out on the same Form 4340. Thus, Mr. Green stated that the DLN used for the assessment against Mr. Young indicated that a quick assessment was actually used.

Before imposing liability under section 6672, the IRS must properly assess the penalty and notify the responsible party. *See* 26 U.S.C. §§ 6203, 6303, and 6671. Section 6672 provides that when a corporate official who is required to withhold and pay over trust fund taxes willfully fails to do so, he or she is liable for a penalty equal to the total amount of the unpaid taxes.[9] *See* 26 U.S.C. § 6672(a); *Godfrey v. United States*, 748 F.2d at 1574 ("The purpose of the 100 percent penalty provision 'is to permit the taxing authority to reach those [persons] responsible for the corporation's failure to pay the taxes which are owing.'") (quoting *White v. United States*, 178 Ct.Cl. 765, 771, 372 F.2d

9. I.R.C. § 6672(a) states in full:
(a) Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof,

shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II of subchapter A of chapter 68 for any offense to which this section is applicable.

513, 516 (1967)). Section 6672 liability is separate and distinct from the underlying liability imposed on the employer for failing to pay the trust fund taxes. *See Cash v. United States,* 961 F.2d 562, 565 (5th Cir. 1992) ("At the same time, however, it is well established that the liability imposed upon a responsible person under § 6672 is separate and distinct from that imposed on the employer under §§ 3102 and 3402 of the Internal Revenue Code. The Service need not attempt to collect first from the corporate employer or its assets before assessing penalties and pursuing collection from responsible persons under § 6672.") (citations omitted), *cert. denied,* 506 U.S. 985, 113 S.Ct. 492, 121 L.Ed.2d 430 (1992); *see also Schultz v. United States,* 918 F.2d at 165 n. 1 ("To assure collection when a corporate employer does not pay its employment taxes, section 6672(a) imposes personal liability on persons responsible for seeing that the taxes were paid....."); *Kelly v. Lethert,* 362 F.2d 629, 635 (8th Cir.1966) ("The result of Section 6672 is thus to make the responsible officers of the corporation, as well as the corporation itself, equally liable as co-debtors to the Government, and the Government may proceed against either in the order best suited in its judgment to collect the unpaid tax.").

Penalties incurred under section 6672 are to be "assessed and collected in the same manner as taxes." 26 U.S.C. § 6671.[10] The statute, I.R.C. § 6203,[11] and its implementing Treasury Regulation, 26 C.F.R. § 301.6203-1, provide the method for assessing section 6672 penalties. *See Teets v. United States,* 29 Fed.Cl. 697, 703–04, *reconsideration granted in part* (1993), *aff'd,* 39 F.3d 1196 (Fed.Cir.1994). I.R.C. § 6203 states that assessments are made by recording the liability in accordance with the regulations promulgated by the Secretary. Treasury Regulation 26 C.F.R. § 301.6203-1 states that the

"assessment shall be made by an assessment officer signing the summary record of assessment [Form 23–C]." 26 CFR § 301.6203-1.

■ In a tax refund case, there is a strong presumption of the correctness of the findings of the Commissioner of Internal Revenue. *See United States v. Fior D'Italia, Inc.,* 536 U.S. 238, 243, 122 S.Ct. 2117, 153 L.Ed.2d 280 (2002) ("An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes. It is well established in the tax law that an assessment is entitled to a legal presumption of correctness-a presumption that can help the Government prove its case against a taxpayer in court."); *Conway v. United States,* 326 F.3d 1268, 1278 (Fed.Cir.), *reh'g denied* (2003)("The ruling of the Commissioner of Internal Revenue enjoys a presumption of correctness and a taxpayer bears the burden of proving it to be wrong.") (quoting *Transamerica Corp. v. United States,* 902 F.2d 1540, 1543 (Fed.Cir.1990)); *Lima Surgical Assocs., Inc. v. United States,* 944 F.2d 885, 888 (Fed.Cir.1991) ("[D]eterminations of the Commissioner of Internal Revenue are presumptively correct.").

The taxpayer not only has the burden of rebutting the presumption of correctness, but also of establishing entitlement to the specific amount of the deduction claimed. *See United States v. Janis,* 428 U.S. 433, 440–441, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)("In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover.") (citing *Lewis v. Reynolds,* 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932), *modified,* 284 U.S. 599, 52 S.Ct. 264, 76 L.Ed. 514 (1932)); *Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935) ("Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's

---

**10.** I.R.C. § 6671 is titled: "Rules for Application of Assessable Penalties." Subsection (a), titled "Penalty Assessed As Tax," states:

 (a) The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as taxes. Except as otherwise provided, any reference in this title to "tax" imposed by this title shall be

deemed also to refer to the penalties and liabilities provided by this subchapter.

**11.** I.R.C. § 6203 states: "The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment."

**600**

determination is invalid."); *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933) ("The Commissioner of Internal Revenue['s] ... ruling has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong.") (citing *Wickwire v. Reinecke,* 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184 (1927)); *Charron v. United States,* 200 F.3d 785, 792 (Fed.Cir.1999) ("Since the [plaintiffs] were seeking refunds of taxes they had paid, they have the burden of proving they are entitled to the amount sought."); *Danville Plywood Corp. v. United States,* 899 F.2d 3, 7–8 (Fed. Cir.1990); *Barenholtz v. United States,* 784 F.2d 375, 381 (Fed.Cir.1986); *Young & Rubicam, Inc. v. United States,* 187 Ct.Cl. 635, 654–55, 410 F.2d 1233, 1244–45 (1969); *L.W. Hardy Co. v. United States,* 1 Cl.Ct. 465, 470 (1982).

To overcome the presumption, the taxpayer has the burden of presenting "substantial evidence as to the wrongfulness of the Commissioner's determination." *KFOX, Inc. v. United States,* 206 Ct.Cl. 143, 151–152, 510 F.2d 1365, 1369 (1975); *Arrington v. United States,* 34 Fed.Cl. 144, 147 (1995), *aff'd,* 108 F.3d 1393 (Fed.Cir.1997). The burden imposed on a plaintiff is both the burden of going forward and the burden of persuasion. Thus, a plaintiff first must come forward with enough evidence to support a finding contrary to the Commissioner's determination. *See Transamerica Corp. v. United States,* 902 F.2d at 1543; *Danville Plywood Corp. v. United States,* 899 F.2d at 7–8; *Arrington v. United States,* 34 Fed.Cl. at 147. Even after satisfying the burden of going forward, a plaintiff must still carry the ultimate burden of proof. *See Transamerica Corp. v. United States,* 902 F.2d at 1543; *Danville Plywood Corp. v. United States,* 899 F.2d at 8.

■ The government may establish a prima facie case as to a taxpayer's liability for the penalty under I.R.C. § 6672 by presenting the assessment of liability against him or her as a responsible person for the willful failure to collect, account for, or pay over withheld taxes from employees. *See Ruth v. United States,* 823 F.2d 1091, 1092–93 (7th Cir.1987) ("[T]he taxpayer bears the risk of nonpersuasion with regard to claims brought under section 6672."). Courts generally do not "look behind an assessment to evaluate the procedure and evidence used in making the assessment," but instead "conduct a *de novo* review of the correctness of the assessment, imposing the risk of nonpersuasion on the taxpayer." *Id.* at 1094. In limited circumstances, however, when the decision of the IRS is shown to be without rational foundation or that it is arbitrary and erroneous, the assessment will not be accorded a rebuttable presumption of correctness. *Id.; see also United States v. Janis,* 428 U.S. at 441, 96 S.Ct. 3021 (1976) (holding that an assessment could be found invalid if it was based on a " 'naked' assessment without [a]ny foundation whatsoever" because illegally seized information could not be used). Once a proper assessment has been offered, however, the burden shifts to the plaintiff to prove "by a preponderance of the evidence that the assessment made against him was erroneous, i.e., that he was either not a 'responsible person,' or that he did not act 'willfully' in failing to discharge his duties as a 'responsible person.' " *Dougherty v. United States,* 18 Cl.Ct. 335, 350 (1989), *aff'd,* 914 F.2d 271 (Fed.Cir.1990); *see also Carson v. United States,* 560 F.2d 693, 696 (5th Cir. 1977) ("The tax collector's presumption of correctness has a herculean muscularity of Goliathlike reach, but we strike an Achilles' heel when we find no muscles, no tendons, no ligaments of fact."); *Cook v. United States,* 46 Fed.Cl. 110, 114 (2000).

It is well established that a certified copy of the taxpayer's Form 4340 triggers the presumption of correctness in favor of the government, and is "routinely used to prove that a tax assessment has in fact been made." *Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir.1991) (citing *United States v. Chila,* 871 F.2d 1015, 1017–18 (11th Cir.1989), *cert. denied,* 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989)); *see also Gentry v. United States,* 962 F.2d 555, 557 (6th Cir.1992) (holding that the Form 4340 Certificate of Assessments and Payments, also known as the Form 4340, is "generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that

have been made."); *Long v. United States,* 972 F.2d 1174, 1181 (10th Cir.1992) ("For purposes of granting summary judgment, a Certificate of Assessments and Payments is sufficient evidence that an assessment was made in the manner prescribed by § 6203 and Treas. Reg. 301.6203–1."), *reh'g denied* (1993); *Hughes v. United States,* 953 F.2d 531, 535 (9th Cir.1992); *Teets v. United States,* 29 Fed.Cl. at 702; *Int'l Fid. Ins. Co. v. United States,* 27 Fed.Cl. 107, 111 (1992) (holding that "the IRS Form 4340 is admissible evidence in support of [a] motion for summary judgment" and that the "Form 4340 also creates a presumption of a valid assessment."); *Pototzky v. United States,* 8 Cl.Ct. 308, 315 (1985). Therefore, once the Form 4340 is introduced, the taxpayer bears the burden of showing that the information presented is incorrect. *See Stallard v. United States,* 12 F.3d 489, 493 (5th Cir.1994) ("If the summary record is properly supported through a Form 4340, the assessment contained in that summary record is considered presumptively valid; the taxpayer must produce evidence to the contrary to rebut this presumption."), *reh'g denied* (1994); *Fidelity Bank v. United States,* 616 F.2d 1181, 1186 (10th Cir.1980) ("the [plaintiff] bears the risk of nonpersuasion in refund suits if the government offers into evidence the tax assessment.").

■ In the case currently before the court, the Form 4340, "Certificate of Assessments, Payments, and Other Specified Matters" clearly identifies that an assessment was made against Donald Young on June 18, 1992 in the amount of $122,054.60. The government argues that the identification or type of assessment, as a jeopardy assessment, on the Form 4340 is incorrect, but that it is clear on the face of the IRS documents that there was an assessment made, and that the amount of the tax and identification of the responsible person is correct. Despite having been given opportunities administratively and in this court to do so, except for referring to the Form 4340's notation of a jeopardy assessment, proclaiming that the Form 23–C is not sufficiently specific, and arguing that because the supporting documents are not available, they therefore did not exist, plaintiff has provided no evidence that an assessment was not made against Mr. Young, that the supporting documents did not exist when the assessment was made, or that the amount assessed was incorrect. Furthermore, plaintiff has conceded that Mr. Young was a responsible party, liable for the amount which was due. The plaintiff also has brought forth no evidence that the jeopardy assessment labeling on the Form 4340, which the government argues was a mistake, prejudiced the plaintiff, based on the concession of being a responsible party and in the absence of any allegations by the plaintiff in the record that the amount assessed was incorrect.

Although the Form 4340 in this case states that the assessment was a jeopardy assessment, the testimony evinced at the hearing in this court establishes that Revenue Officer Alzner did not intend to pursue a jeopardy assessment, but was trying to accomplish a prompt or quick assessment. Additionally, the testimony offered by Robert Green provides evidence that the DLN on the Form 4340 identifies the assessment as a manual, or quick, assessment. Courts have repeatedly held that "the government may support a tax assessment based on any admissible evidence, including that first disclosed in discovery, and, conversely, need not rely solely, or at all, on the evidence reviewed administratively by the Service." *Cook v. United States,* 46 Fed.Cl. at 114–15 (citing *Tucker v. United States,* 8 Cl.Ct. 180, 187–88 (1985), *modified on other grounds,* 8 Cl.Ct. 575 (1985)).

The court recognizes that the procedures employed by the IRS, unfortunately, demonstrate less than the highest standard of care. The record before the court, including the testimony offered by the defendant, however, provides sufficient basis on which to conclude that, despite transcription errors, the assessment recommended by Ms. Alzner, and made by the IRS was a quick assessment.

■ Plaintiff's argument that a quick assessment is inappropriate for the first three quarters of 1990 because the statute of limitations would not expire before April 15, 1994 also is not persuasive. This exact argument was presented in *Koss v. United States,* No.

Civ.A. 97–440, 1998 WL 254042, *3 (E.D.Pa. May 8, 1998), *reconsideration denied,* 1998 WL 398246 (E.D.Pa. June 23, 1998). In *Koss,* as in this case, an IRS agent testified and interpreted DLNs in the plaintiff's Certificate of Assessments and Payments (Form 4340), claiming the DLNs indicated that a "prompt" or "quick" assessment was conducted. *Id.* at *2. The plaintiffs in *Koss* argued that a quick assessment was inappropriate because the statute of limitations was not set to expire for more than sixty days. The *Koss* court observed that the IRS makes quick assessments " 'when the statutory period for assessment will expire before assessment action can be completed under the regular procedures.' " *Id.* at *3 (citing Internal Revenue Manual 5314.1(1)(a)). The court found that the plaintiff's situation did not warrant a departure from a regular assessment, and that the government provided no explanation for why the plaintiffs qualified for either a quick or prompt assessment. *Id.* The court, however, did not invalidate the IRS's assessment on these grounds. While the *Koss* court found the IRS's actions to contravene standard procedures, the court invalidated the assessment only because notice was ineffective. *Id.* at *4.

In Mr. Young's case, the plaintiff argues that the assessment for the first three quarters of 1990 was not valid because it was included in the quick assessment for the 1988 excise taxes and completed well before the statute of limitations was expected to expire for the first three quarters of 1990. While, once again, the procedures of the IRS were inexact, the fact that the IRS conducted a manual or quick assessment, instead of a regular, computer assessment, did not prejudice the plaintiff, is not dispositive, and does not invalidate the assessment.

Finally, plaintiff argues that there could be no valid assessment for the first three quarters of 1992 because the Form 4340 stated "Period Ending: Dec. 1988." Once again, although the IRS's proceedings were less than careful, plaintiff's argument is unpersuasive. In *Purcell v. United States,* the United States Court of Appeals for the Ninth Circuit addressed a similar argument. *See Purcell v. United States,* 1 F.3d 932, 940–41 (9th Cir.1993). In *Purcell,* the plaintiff was assessed a section 6672 liability for several quarters of 1981 and 1982. The plaintiff argued in *Purcell* that because the Form 4340 placed the entire assessment under the taxable period ending September 30, 1982, there was no record evidence that the other three, previous quarters were taxed. The *Purcell* court rejected plaintiff's argument, finding that it was customary for the IRS to refer to the last period in a lump-sum assessment, and that "it is undisputed that the amount of the assessment accurately reflects the total amount of the taxes withheld that the Company failed to pay over." *Id.* at 941. Although a more difficult conclusion than the one adopted in *Purcell,* because, in this case, the IRS listed an earlier period rather than the last period as the end date, this court adopts the *Purcell* court's reasoning. The fact that the Forms 4340 and 3552 for Mr. Young denominate the assessment period as ending December 31, 1988, does not signify that no assessment was made for the first three quarters of 1990. As in *Purcell,* in the present case, the amount reflected on the forms accurately reflects the total assessment for all the quarters in which taxes were due, and was assessed against the proper party. Moreover, there is evidence in the record, in the Form 2751, Proposed Assessment of 100 Percent Penalty, attached to the January 19, 1993 letter from the IRS to Mr. Young, in which the IRS, albeit after the assessment date, identifies the amounts of taxes due for each individual time periods.

The fact that the plaintiff has not presented any contrary evidence indicating that the assessment was not for the proper amount or against the proper party is critically important to the court's conclusion that this plaintiff should not be able to escape paying taxes due and owing as assessed on June 18, 1992, albeit with demonstrably inefficient IRS attention to bookkeeping, against Mr. Young as the responsible party. Although based on an imperfect record and demonstrably inefficient IRS procedures, this court finds insufficient evidence in the record to reject the presumption of accuracy attributed to the assessment made by the IRS on June 18, 1992 against Mr. Young as a correct, responsible party.

### The IRS's June 18, 1992 Assessment Complied with 26 U.S.C. § 6203.

The plaintiff does not deny that he is liable for the section 6672 penalty as a responsible person for SJA for the first three quarters of 1990. Plaintiff also does not deny receiving notice of the assessment pursuant to I.R.C. § 6303, or that he knew which tax periods formed the basis of the June 18, 1992 assessment. Nor does the plaintiff's counsel argue that the plaintiff suffered any harm from the way in which the tax was assessed. The plaintiff asserts, however, that the assessment at issue does not comply with the requirements of 26 U.S.C. § 6203 and the implementing Treasury Regulation, 26 C.F.R. § 301.6203–1.

Plaintiff argues that the available supporting records to the Form 23–C fail to itemize the amounts of the assessment for each period underlying the section 6672 penalty assessment, as required by 26 C.F.R. § 301.6203–1. The existing records from the time of the assessment cite the alleged total amount of the penalty for the December, 1988 tax period as well as for the first three quarters of 1990 (i.e., $122,287.88), but identify only December, 1988, not the first three quarters of 1990, as the end date to which the penalty corresponds.

The defendant asserts that the original, contemporaneous records, containing this information, were filled out at the time, but have been lost, and that, in any event, there was no need to include a taxable period in the supporting records for the June 18, 1992, section 6672 penalty assessment. The defendant claims that the Form 4183, which does not reference any taxable period, serves as an adequate supporting record for the Form 23–C and complies with Treasury Regulation § 301.6203–1. According to the defendant, the other forms that reference only the December, 1988 tax period for the section 6672 penalty do so only because the IRS computer system requires that a tax period be entered in that field. In other words, according to the defendant, the reference to the December, 1988 period on those forms is of no legal import and appears on them solely for administrative convenience.

The government also argues that the Form 2751 attached to the January 19, 1993 letter to Donald Young, itemized the relevant periods and provided adequate notice to the plaintiff. The government further suggests, based on Ms. Alzner's testimony, that at the time the assessment was made, she necessarily would have filled out a Form 2749, which, although no longer locatable, would have included the itemized information.

Section 6203 directs that the assessment shall be made in accordance with the rules or regulations prescribed by the Secretary. Treasury Regulation § 301.6203–1, states that:

> The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment. The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the amount so shown, and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record. The date of the assessment is the date the summary record is signed by an assessment officer. If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of the assessment, the character of the liability assessed, the taxable period if applicable, and the amounts assessed.

26 C.F.R. § 301.6203–1.

As previously noted, the Form 23–C is a summary record that shows all of the assessments for all taxpayers, by a particular district, in a particular period, on a particular date. *See Howell v. United States,* Civ. No. 93–C–952J, 1996 WL 652714, at *1 (D.Utah Aug. 9, 1996) ("The first step of the assessment process is the creation of a summary record [Form 23–C] which summarizes all the assessments made in a particular district on a particular date."), *rev'd on other grounds,* 164 F.3d 523 (10th Cir.1998); *see*

*also Fulgoni v. United States,* 23 Cl.Ct. 119, 122 (1991) ("[T]he 23C does not contain information on individual taxpayers") (citing M. Saltzman, *IRS Practice and Procedure* ¶ 10.02, at 10–4 (1981)); *United States v. Hesse,* No. 87 CIV. 1499, 1990 WL 6562, at *2 (S.D.N.Y. Jan. 23, 1990).

It is only through the supporting records that transactions related to an individual taxpayer can be examined. However, the Form 23–C contains a signed "Certification" as follows: "I certify that the taxes, penalty, and interest of the above classifications, hereby assessed, are specified in supporting records, subject to such corrections as subsequent inquiries and determinations in respect thereto may indicate to be proper." In this case, a signed certification on the Form 23–C relevant to this case appears at the bottom of the page in the record.

As discussed above, the Certificate of Assessments and Payments, also known as the Form 4340, is considered sufficient proof, in the absence of contrary evidence, of the adequacy of an assessment in conformance with statute and regulation. In this case, the Form 4340 identified Donald Young as the taxpayer and the date of the assessment as "06/18/1992." The liability was characterized as a "Civil Penalty," and an "I.R.C. 6672–100% Penalty." The Form 4340 further identified the tax period pertaining to the assessment as "Period Ending: Dec. 1988." The amount of plaintiff's assessment also appeared on the Form 4340 as two separate assessments, totaling $122,287.88, which corresponds to the amount assessed for the tax period ending in December of 1988, as well as for the first three quarters of 1990. The first assessment amount is listed as $122,054.60, which is the penalty that was assessed for the first three quarters of 1990, although the Form 4340 itself does not indicate the individual tax periods corresponding to this assessment. The second assessment amount was listed as $233.28, which was the penalty assessed for the tax period ending December, 1988, but again the Form 4340 does not specifically designate the date. Similarly, the IRS transcript of plaintiff's account only refers to the December, 1988 tax period, but identifies a penalty in the

amount of $122,287.88 (the sum of $122,054.60 plus $233.28).

Based on the available documentation in the record, and on Ms. Alzner's and Mr. Green's testimony at the hearing, the defendant argues that the IRS intended to make a section 6672 penalty assessment on June 18, 1992 for the first three quarters of 1990, as well as for the tax period ending December 31, 1988. The defendant underscores that Treasury Regulation § 301.6203–1 indicates that supporting records should state the "taxable period, *if applicable.*" According to the defendant, "an individual taxpayer has no taxable period with respect to a § 6672 penalty," because a single section 6672 penalty can be assessed for an aggregate, lump-sum amount covering unpaid trust fund taxes that have accrued over several periods. Defendant argues that the December, 1988 date was merely the nominal, tax period cited as a "bookkeeping" entry, which does not invest the tax period that is placed in that blank on the various IRS forms with legal significance.

The defendant and plaintiff agree that the IRS may make a lump-sum assessment. *See Taylor v. I.R.S.,* 69 F.3d 411, 419 (10th Cir. 1995) ("[A] lump sum assessment of § 6672 penalties by the IRS is permissible."); *Stallard v. United States,* 12 F.3d at 495; *Purcell v. U.S.,* 1 F.3d at 940–41 (rejecting plaintiff's argument that a multi-quarter assessment cannot be assigned to a single time period). It appears, however, that the IRS's usual practice in such cases is to reference the last period in the lump sum assessment. *See Stallard v. United States,* 12 F.3d at 494–95 (imposing a "temporal requirement for § 6672," while stating that "[n]onetheless, an assessment based on the last period for which that taxpayer is a responsible party would be sufficient...."). Even the defendant concedes that "[g]enerally, the latest tax period underlying unpaid taxes is filled in as the tax period of a 6672 assessment."

Under this practice, the relevant tax forms in this case normally would have referenced the third quarter of 1990, ending September 30, 1990, because it is the last tax period in the lump sum assessment against Donald Young. In the case currently under review, however, December, 1988, the first tax period

of the aggregate assessment, was the period actually referenced on the Form 4340, the Form 3552, and the transcript of Donald Young's account. The plaintiff, therefore, argues that a lump sum penalty assessment that states it ends on December, 1988, cannot also include the penalty assessments for subsequent tax periods (i.e., the first three quarters of 1990). While the plaintiff may be correct that logic and convention dictate that the last period of a multi-period, penalty assessment should be referenced, the failure to do so is not enough to invalidate an assessment for an obviously larger amount of taxes due, which equals the exact amount due for the period ending December 31, 1988 and the first three quarters of 1990.

▮ Adequate notice of penalty assessments is mandated by statute and regulation. Section 6303 and its implementing regulation govern the notice that must be given to a taxpayer who is liable for a section 6672 penalty. The notice need contain only a statement of the amount due and a demand for payment. *See Planned Invs. Inc. v. United States,* 881 F.2d 340, 344 (6th Cir. 1989) ("Section 6303 does not prescribe any particular form of notice. Treasury Regulations promulgated under the authority of § 6303 merely parrot the statutory language that the notice shall state the amount of the tax and demand payment thereof. 26 C.F.R. § 301.6303–1(a)."). Inadequate notice, however, will not invalidate an otherwise valid penalty assessment. *See Howell v. United States,* 164 F.3d 523, 526 (10th Cir.1998) ("We hold that any failure by the IRS to comply with its duty to provide the information set out in section 301.6203–1 did not render the assessment in this case invalid."). Even a notice that contains technical defects is valid as long as the taxpayer has not been prejudiced or misled by the error and is afforded a meaningful opportunity to contest the assessment. *See Purcell v. United States,* 1 F.3d at 941–942 (recognizing that a failure to send notice does not invalidate the assessment); *Sage v. United States,* 908 F.2d 18, 22 (5th Cir.1990) (holding that where a technical mistake on a notice of assessment and demand for payment did not mislead a taxpayer who had actual knowledge of the correct time period, the assessment was val-

id); *Planned Invs. v. United States,* 881 F.2d at 344 (holding that: "Notices containing technical defects [including absence of the tax periods involved] are valid where the taxpayer has not been prejudiced or misled by the error and is afforded a meaningful opportunity to litigate his claims."); *Wood Harmon Corp. v. United States,* 206 F.Supp. 773, 777 (S.D.N.Y.1962), *aff'd,* 311 F.2d 918 (2nd Cir.1963) ("There is no evidence that in paying the amount of the assessment the plaintiff was in any way misled by the description of the taxable period and therefore the variance in dates, if any, may be disregarded.") (citing *Scofield's Estate v. Comm'r,* 266 F.2d 154, 167 (6th Cir.1959)).

▮ The IRS asserts that it gave the plaintiff more information than it was required to give him pursuant to section 6303 and its implementing regulation. On June 18, 1992, the IRS issued plaintiff a Form 3552, Notice of Tax Due on Federal Tax Return, which notified plaintiff that a $122,287.88 civil penalty for the tax period ending "12/31/88" had been assessed against him and demanding that plaintiff pay that amount. Additionally, defendant states that despite the Notice of Tax Due, the IRS was not permitted to enforce the collection of the penalty until a final determination on plaintiff's responsibility and willfulness was completed and the plaintiff was afforded the ability to exercise his appeal rights, citing the Internal Revenue Manual (albeit the 2001 version) §§ 5.1.4.9(a); 5.1.4.11; 104.6.10.9.1(e).

On January 19, 1993, after Revenue Officer Alzner completed her investigation and determined that sufficient evidence existed to assess a section 6672 penalty against plaintiff, the IRS sent plaintiff a Form 2751, Proposed Assessment of 100 Percent Penalty, accompanied by a cover letter. The Form 2751 indicated that plaintiff's section 6672 liability was $201,706.04 for willfully failing to pay SJA's withheld excise taxes for the period ending 12/31/88, and withheld employment taxes for all four quarters of 1990. The Form 2751 enumerated the specific tax periods that formed the basis for plaintiff's section 6672 liability, as well as the amount of

the penalty that corresponded to each tax period. Under section 6303, the IRS was not required to provide this detailed information to the plaintiff, but it did so anyway. In short, the Form 2751 contained the information that the plaintiff insists should be available to the plaintiff in other supporting documents.

In this case, the plaintiff concedes that a copy of the record of assessment was not requested. Absent a request from the taxpayer, the IRS was not obliged to provide this information, however, the IRS ultimately did provide the plaintiff with the information via the Form 2751, although seven months after the June 18, 1992, Form 3552 was sent to Mr. Young notifying him of his $122,287.88 total tax obligation.[12] In other words, the plaintiff received all the information required by 26 C.F.R. § 301.6203, including an itemized breakdown of the tax periods underlying the penalty assessment and the amounts assessed for each tax period. Once again, the plaintiff has failed to show that he was prejudiced in any way by when he received notice of the breakdown of specific periods for which his taxes were due.

■ The plaintiff agrees that the information required by statute and regulation to support an assessment need not be included on a particular form or forms, but argues that the supporting documents must be "prepared prior to the assessment date." The plaintiff, however, argues that if the defendant cannot produce the backup records for the Form 23–C to show that they existed at the time of the assessment, there was no valid assessment. In this case, the government asserts, relying on the testimony of Ms. Alzner, and the certification on the Form 23–C, that, although not available today, proper documentation for the June 18, 1992 assessment against Mr. Young existed at the time or the assessment would not have been made. Therefore, the defendant argues that the summary record of assessment (the Form 23–C) was "sufficiently backed by supporting documents providing adequate no-

tice." Furthermore, according to the defendant, the plaintiff has presented no evidence that appropriate supporting documents did not exist when the IRS made its June 18, 1992 assessment.

The issue of how to handle lost documents, or documents destroyed in the regular course of business, has been addressed with reference to the presumption in favor of the IRS accorded to the Certificate of Assessments and Payments, as follows:

> Accordingly, this Court accepts the document "Certificate of Assessments and Payments" submitted by the Government as presumptive proof of a valid assessment. Given that the defendant has produced no evidence to counter this presumption, the Court is satisfied that the Government has established that the claimed tax liability was properly assessed against the defendant.

*United States v. Dixon,* 672 F.Supp. 503, 506 (M.D.Ala.1987), *aff'd,.* 849 F.2d 1478 (11th Cir.1988). Similarly, the United States Court of Appeals for the Ninth Circuit stated that:

> The IRS, by established routine, had destroyed all copies of the notices of deficiency and demands for payment that had been mailed to Zolla. The government submitted postal form 3877 [the IRS manual recommending procedure for recording the statutory notices of deficiency] certifying that the notices of deficiency had been mailed and an IRS form certifying that the taxes and the section 6651(a)(3) failure-to-pay penalties had been assessed. Zolla offered no contrary evidence.

> We adopt the view of the Eighth Circuit and the Tax Court that these official certificates are highly probative, and are sufficient, in the absence of contrary evidence, to establish that the notices and assessments were properly made. *See United States v. Ahrens,* 530 F.2d 781, 784–86 (8th Cir.1976); *Cataldo v. Commissioner,* 60 T.C. 522, 524, 1973 WL 2646 (1973).

---

**12.** Although the Form 2751 does not appear to identify the date of the noticed assessment, that date is included on the Form 3552. Therefore, both Form 2751 and Form 3552, in conjunction, contain all the information that the IRS must provide the taxpayer upon request, pursuant to Treasury Regulation § 301–6203–1.

*United States v. Zolla,* 724 F.2d 808, 810 (9th Cir.) (footnotes omitted), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59, *reh'g denied,* 469 U.S. 1067, 105 S.Ct. 550, 83 L.Ed.2d 438 (1984).

The court in *Cook v. United States* also addressed the issue of unavailable administrative records:

> In the instant case, the loss of the administrative file gives rise to the possibility that the penalty assessment in question lacks foundation. As described in *Janis* and its progeny, however, an assessment is not "naked" simply because the administrative file supporting its entry is lost— what is critical, given the *de novo* nature of the proceedings before this court, is that admissible evidence exists to support the assessment. *See Estate of Magnin v. Commissioner,* 184 F.3d 1074, 1081 (9th Cir.1999); *Karme v. Commissioner,* 673 F.2d 1062, 1065 (9th Cir.1982). If such evidence exists, and is admitted by the court, it is irrelevant whether it is the same evidence that the Service relied upon in originally making its assessment. *See Coleman v. United States,* 704 F.2d 326, 329 (6th Cir.1983) (holding that assessment was "naked," but noting that "secondhand" records or "any demonstrably reasonable methodology of estimation" may be used to establish presumption of correctness). Indeed, consistent with the "no-look" doctrine, courts have repeatedly held that the government may support a tax assessment based on any admissible evidence, including that first disclosed in discovery, and, conversely, need not rely solely, or at all, on the evidence reviewed administratively by the Service. *See Tucker v. United States,* 8 Cl.Ct. 180, 187–88 (1985), *modified on other grounds,* 8 Cl.Ct. 575 (1985).

*Cook v. United States,* 46 Fed.Cl. at 114–15 (footnote omitted).

In the case currently before the court, unlike in *Cook,* a hearing has been held. At the hearing, and in her declaration, Ms. Alzner testified that she routinely prepared the requested supporting records, so they must have existed at the time of the assessment, and that she could not have obtained an assessment from her supervisor after issuing her Form 4183, the Recommendation for the Penalty Assessment, without having completed supporting documents. Additionally, at the hearing, the following colloquy occurred between defendant's counsel and Revenue Officer Alzner:

Q: Thank you. So, just going back to the question I had asked you about your normal procedure in 1992 for recommending an assessment to protect the assessment period, you said you would have completed three forms?

A: This 4183 form, which is the recommendation, and then there's a Form 2749 which is an actual request for the assessment, and then in order to make a prompt or a quick assessment there was a third form, a Form 2859.

Q: Did you complete all three forms?

A: Yes.

THE COURT: All right, tell me those numbers again?

[Ms. Alzner]: 4183 is the recommendation. 2749 is the request for the assessment. And a 2859 is the prompt or quick assessment request form.

BY MS. FLUM:

Q: And you're confident that you completed all three forms?

A: Yes.

Q: Why are you confident.

A: I wouldn't have had an assessment made if I hadn't.

Q: Do you know the whereabouts of the originals of those three forms?

A: No.

In her testimony, and in her declaration submitted to the court, Ms. Alzner acknowledged that although only the first page of the Form 4183 is in the record, and testified that she does not know the location of the other pages of the Form 4183. She also indicated that page four of the Form 4183 is a worksheet on which the Revenue Officer lists each taxable period for which the corporation failed to pay trust-fund taxes, the type of the unpaid tax, the total unpaid tax for each period, the amount of that tax, and any interest of penalty assessed. Ms. Alzner also stated that she "always complete[s] the work-

sheet on page 4 of the Form 4183," and that the IRS Group Manager "will not approve the recommendation of a 100–percent penalty assessment unless page 4 of the Form 4183 has been completed." She also stated that she was "confident that [she] completed page 4 of the Form 4183 that [she] signed on June 15, 1992, recommending the assessment of a 100 percent penalty against the plaintiff." Ms. Alzner further indicated:

It is and has always been my practice to complete a Form 2749, Request for 100–Percent Penalty Assessment. I am confident that I completed a Form 2749 requesting that an assessment of $122,287.88 be made against the plaintiff. The Form 2749 has a section titled "Description of Liability." In this section, I would have identified the tax form, period ending, unpaid balance, and trust fund portion of outstanding balance, totaling the trust fund portion outstanding to be assessed. The Form 2749 I completed requesting that a 100–percent penalty be assessed against the plaintiff in the amount of $122,287.88 is no longer in existence, and I have no knowledge of its whereabouts.

Finally, Ms. Alzner testified that if she had not completed page four of the Form 4183: "I would have had no basis to prepare make [sic] any-prepare any of the other forms. I wouldn't have been able to calculate the amount." She concluded that the assessment would not have been made if she had not prepared the supporting 2749. Furthermore, the Form 23–C contains a signed certification that the "supporting records" existed to support entering the assessment on the Summary Record of Assessments. After having an opportunity to observe Ms. Alzner during her testimony, the court finds her to have been a credible witness and accepts her account that she prepared the, now missing, supporting documents as required.

In the instant case, there is no evidence in the record that the supporting records at issue were wilfully destroyed. Moreover, plaintiff has brought forth no evidence to rebut Ms. Alzner's testimony that the supporting records, including an itemization for the first three quarters of 1990, existed when the assessment was made. Furthermore, although sent approximately seven months after Ms. Alzner issued her formal recommendation and the tax was assessed, the Form 2751 sent to Mr. Young informed him of the sought after tax period information. The plaintiff does not deny having received notice of the tax quarter information. Plaintiff also has not demonstrated that he was harmed in any way by the defendant's failures.

## CONCLUSION

Even given the sum of defendant's irregular proceedings, the assessment in this case against Donald Young should not be rejected or invalidated. It was in the proper amount, against the proper responsible individual, and before enforcement procedures were initiated, Mr. Young had adequate notice of all the information he sought. The court finds that a quick assessment in the proper amount was made against Donald Young for the first three quarters of 1990 and that no refund is due. For the forgoing reasons, after supplementation of the administrative record with the declarations and the testimony offered by the parties, the plaintiff's motion for summary judgment is **DENIED** and defendant's motion for summary judgment is **GRANTED**. The clerk's office shall **DISMISS** the plaintiff's complaint, with prejudice, and enter judgment for the defendant, consistent with this opinion.

**IT IS SO ORDERED.**